1  HANSON BRIDGETT LLP
   PAUL B. MELLO - 179755
2  pmello@hansonbridgett.com
   WALTER R. SCHNEIDER - 173113
3  wschneider@hansonbridgett.com
   MEGAN OLIVER THOMPSON - 256654
4  moliverthompson@hansonbridgett.com
   RENJU P. JACOB - 242388
5  rjacob@hansonbridgett.com
   425 Market Street, 26th Floor
6  San Francisco, CA  94105
   Telephone:    (415) 777-3200
7  Facsimile:    (415) 541-9366

8  Attorneys for Defendants State of California, Governor
   Edmund G. Brown, Jr., James Humes, Jeanne Woodford,
9  Matthew L. Cate, Terri L. McDonald, Scott M. Kernan,
   Wendy S. Still, Margarita E. Perez, Marvin E. Speed, Arnold
10 P. Fitt, Robert G. Doyle, Martin N. Hoshino, Rhonda W.
   Skipper-Dotta, George E. Lehman, Patricia A. Cassady,
11 Richard D. Jallins, William B. Crisologo, Alan Silver, Edward
   McNair, and Kenneth E. Cater

12

13              UNITED STATES DISTRICT COURT

14         FOR THE NORTHERN DISTRICT OF CALIFORNIA

15                    OAKLAND DIVISION

16

17 DEREK WHEAT, et al.,                No. CV 11-02026 SBA

18            Plaintiffs,             **DEFENDANTS' NOTICE OF MOTION
                                      AND MOTION TO DISMISS PURSUANT
19      v.                            TO FED. R. CIV. P. 8 AND 12;
                                      MEMORANDUM OF POINTS AND
20 STATE OF CALIFORNIA, et al.,       AUTHORITIES IN SUPPORT OF SAME**

21            Defendants.            **Date:     October 4, 2011
                                      Time:     1:00 p.m.
22                                    Ctrm.:    1
                                      The Hon. Saundra Brown Armstrong**

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF ISSUES TO BE DECIDED ....................................................2

III.   STATEMENT OF FACTS .....................................................................................3

    A.     Summary Of Plaintiff's Allegations ...........................................................3

    B.     Plaintiff's Claims Overlap With Valdivia v. Brown.....................................4

    C.     Plaintiff's Claims Mirror Those Brought In Johnson I and II .....................5

IV.    LEGAL STANDARDS ...........................................................................................6

    A.     Standard For Dismissal Under Rule 12(b)(6) .............................................6

V.     ARGUMENT...........................................................................................................7

    A.     The Entire Action Should Be Dismissed On Grounds Of Judicial Comity............7

    B.     Res Judicata Bars Claims Two, Three, Six, Seven, And Ten Based On
           Johnson I ......................................................................................................8

    C.     Res Judicata Bars Claims Four, Five, Six, Seven, Eight, And Nine Based
           On Valdivia v. Brown .................................................................................10

    D.     Alternatively, Claims One, Two, Three, Six, Seven, And Ten Each Fail To
           State A Claim Upon Which Relief Can Be Granted...................................13

        1.     Claim One Fails To State A Claim ...............................................13

            a.     Warrantless Searches And Seizures Of Parolees Are
                 Constitutional Under California Law ...............................14

            b.     There Is No State-Created Liberty Interest In Imposing
                 Parole Holds In Particular Circumstances .......................14

        2.     As The Court Held In Johnson I, Claim Two Fails To State A
                 Claim..............................................................................................16

        3.     As The Court Held In Johnson I, Claim Three Fails To State A
                 Claim..............................................................................................16

        4.     As The Court Held In Johnson I, Claim Six Fails To State A Claim ........17

        5.     As The Court Held In Johnson I, Claim Seven Fails To State A
                 Claim..............................................................................................17

        6.     As The Court Held In Johnson I, Claim Ten Fails To State A Claim .......18

    E.     The State Of California Is Immune From Liability Under 42 U.S.C. § 1983 .......19

    F.     No Section 1983 Claim Is Stated Against The Individual Defendants.................19

    G.     The Class Allegations Should Be Stricken Under Rule 12(f) .............................20

    H.     Plaintiff Lacks Standing to Bring This Action Under Rule 12(b)(1) ...................21

    I.     The Complaint Fails To Comply With Rule 8(a) .................................................22

VI.    CONCLUSION......................................................................................................24

# TABLE OF AUTHORITIES

**Page**

**Cases**

Alltrade, Inc. v. Uniweld Products, Inc.
946 F.2d 622 (9th Cir. 1991) ...................................................................7

Armstrong v. Davis
275 F.3d 849 (9th Cir. 2001) ................................................................22

Ashcroft v. Iqbal
129 S. Ct. 1937 (2009)................................................................6, 22

Atl. Corp. v. Twombly
550 U.S. 544 (2007).................................................................6

Ball v. James,
451 U.S. 355 (1981).................................................................21

Barrett v. Avco Fin. Servs.,
292 B.R. 1 (D. Mass. 2003) ................................................................20

Board of Educ. v. Climatemp, Inc.,
1981 U.S. Dist. LEXIS 11092 (D. Ill. 1981) ................................................20

Carlo v. City of Chino
105 F.3d 493 (9th Cir. 1997) ................................................................15, 16

Chandler v. State Farm Mut. Auto. Ins. Co.
598 F.3d 1115 (9th Cir. 2010) ................................................................21

Church of Scientology v. U.S. Dep't of Army,
611 F.2d 738 (9th Cir. 1979) ................................................................7

City of Cleburne v. Cleburne Living Ctr. 473 U.S. 432 (1985) ................................................17

Clements v. Airport Auth.
69 F.3d 321 (9th Cir. 1995) ................................................................8

Coackley v. Murphy
884 F.2d 1218 (9th Cir. 1989) ................................................................16, 22

Comm. Telesystems Int'l v. Cal. Pub. Util. Com.,
196 F.3d 1011 (9th Cir. 1999) ................................................................8

Costantini v. Trans World Airlines
681 F.2d 1199 (9th Cir. 1982) ................................................................11

County of Sacramento v. Lewis
523 U.S. 833 (1998)................................................................16

Del Campo v. Kennedy
491 F. Supp. 2d 891 (N.D. Cal. 2006) ................................................................10

Federated Dept. Stores, Inc. v. Moitie
452 U.S. 394 (1981)................................................................9

Ferris v. Cuevas
118 F.3d 122 (2d Cir. 1997) ................................................................10

Gagnon Scarpelli
411 U.S. 778 (1973)................................................................18

- ii -

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

Gasho v. United States
   39 F.3d 1420 (9th Cir. 1994) ........................................................9

4

General Tel. Co. of the Sw. v. Falcon
   457 U.S. 147 (1982) ........................................................20

5

Gilmore v. Inmates of San Quentin State Prison
   220 F.3d 987 (9th Cir. 2000) ........................................................10

6

Gregg v. Georgia
   428 U.S. 153 (1976) ........................................................18

7

Hansen v. Black
   885 F.2d 642 (9th Cir. 1989) ........................................................19

8

Hooker v. Simon
   2010 U.S. Dist. LEXIS 97568 (E.D. Cal. 2010) ........................................................22

9

10

James v. Ball
   613 F.2d 180 (9th Cir. 1979) ........................................................20

11

James v. Rowlands
   606 F.3d 646 (9th Cir. 2010) ........................................................15

12

Johnson v. United States
   529 U.S. 694 (2000) ........................................................18

13

King v. Atiyeh
   814 F.2d 565 (9th Cir. 1987) ........................................................19

14

15

McHenry v. Renne
   84 F.3d 1172 (9th Cir. 1996) ........................................................22, 23, 24

16

Monteiro v. Tempe Union High Sch. Dist.
   158 F.3d 1022 (9th Cir. 1998) ........................................................17

17

Morrissey v. Brewer
   408 U.S. 471 (1972) ........................................................17, 18

18

O'Shea v. Littleton
   414 U.S. 488 (1974) ........................................................21

19

20

Pacesetter Sys., Inc. v. Medtronic, Inc.
   678 F.2d 93 (9th Cir. 1982) ........................................................7

21

Pashek v. Ariz. Bd. of Regents,
   82 F.R.D. 62 (D. Ariz. 1979) ........................................................20

22

Quad/Tech Inc. v. Q.I. Press Controls
   2010 U.S. Dist. LEXIS 121063 (N.D. Cal. 2010 ........................................................7

23

24

Quern v. Jordan
   440 U.S. 332 (1979) ........................................................19

25

Rhodes v. Chapman
   452 U.S. 337 (1982) ........................................................16, 22

26

Rizzo v. Dawson
   778 F.2d 527 (9th Cir. 1985) ........................................................16, 22

27

Robertson v. Dean Witter Reynolds, Inc.

28

- iii -

**TABLE OF AUTHORITIES**
(continued)

Page

749 F.2d 530 (9th Cir. 1984) ......................................................................6

Roush v. White
389 F. Supp. 396 (N.D. Ohio 1975)..........................................................17

Samson v. California
547 U.S. 843 (2006)...................................................................................14

Sanders v. Apple Inc.
672 F. Supp. 2d 978 (N.D. Cal. 2009) .......................................................20

Sandin v. Conner
515 U.S. 472 (1995)...................................................................................15

SASCO v. Byers
2009 U.S. Dist. LEXIS 36886 (N.D. Cal. 2009) ........................................7

SEC v. Randolph
736 F.2d 525 (9th Cir. 1984) .....................................................................10

Sellars v. Procunier
641 F.2d 1295 (9th Cir. 1981) ...................................................................20

Sokol v. New United Motor Mfg., Inc.,
1999 U.S. Dist. LEXIS 20215 (N.D. Cal. 1999) .......................................21

Stone v. City and County of San Francisco
968 F.2d 850 (9th Cir. 1992) .....................................................................11

Tahoe-Sierra Pres. Council, Inc. v. Tahoe-Reg'l Planning Agency
322 F.3d 1064 (9th Cir. 2003) ............................................................8, 9, 11

Taylor v. Sturgell
553 U.S. 880 (2008).....................................................................................9

Thompson v. Davis
295 F.3d 890 (9th Cir. 2002) .......................................................................6

United States v. Brown
59 F.3d 102 (9th Cir. 1995) ..................................................................18, 19

United States v. Hall,
419 F.3d 980 (2005)...................................................................................17

United States v. Knights
534 U.S. 112 (2001)...................................................................................18

United States v. Lopez
474 F.3d 1208 (9th Cir. 2007) ...................................................................14

Valerio v. Boise Cascade Corp.
80 F.R.D. 626 (N.D. Cal. 1978)................................................................10

Warth v. Seldin
422 U.S. 490 (U.S. 1975)...........................................................................21

Will v. Mich. Dep't of State Police
491 U.S. 58 (1989).....................................................................................19

Wilson v. Seiter
501 U.S. 294 (1991)...................................................................................19

- iv -

1

### TABLE OF AUTHORITIES
(continued)

2
Page

3    Wright v. RBC Capital Markets Corp.
     2010 U.S. Dist. LEXIS 80165 (E.D. Cal. 2010) ............................................................... 7

4    **Statutes**

5    15 Cal. Code Regs §§2600-2601 ..................................................................... 14, 15, 16

6    42 U.S.C. § 1983 ................................................................................ 15, 17, 19, 20, 21

7    42 U.S.C. § 1997e(a) ........................................................................................... 21

     Cal. Pen. Code § 3041 ......................................................................................... 14

8    Cal. Pen. Code § 851.5 ........................................................................................ 15

9    Cal. Pen. Code §3067(a) ....................................................................................... 14

10   Fed. R. Civ. P. 23(c)(1)(A) .................................................................................... 20

     Fed. R. Civ. P. 8, 12(b)(1), 12(b)(6) and 12(f) ............................................ 1, 6, 20, 21, 22, 23

11   U.S. Const. amend. XIII, §1 .................................................................................. 18

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS' NOTICE OF MOTION AND MOTION TO DISMISS; MPA ISO SAME
(CV 11-02026 SBA)                                                      3053273.1

1 | **NOTICE OF MOTION AND MOTION**

2 | TO PLAINTIFF AND HIS ATTORNEY OF RECORD:

3 | PLEASE TAKE NOTICE THAT on October 4, 2011 or as soon thereafter as this matter

4 | may be heard, in Courtroom 1 of the above-entitled Court, located at 1301 Clay Street, Oakland,

5 | California, Defendants, by and through their attorneys, will and hereby do move to dismiss the

6 | Complaint in this action. Defendants make this motion pursuant to Fed. R. Civ. P. 8, 12(b)(1),

7 | 12(b)(6), and 12(f), and federal common law.

8 | This motion is made on the following grounds: (1) judicial comity bars the entire action

9 | based on overlap with *Jacobson v. Brown*; (2) res judicata bars Claims Two, Three, Six, Seven,

10 | and Ten based on overlap with *Jacobson v. Brown*; (3) res judicata bars Claims Four through

11 | Nine based on overlap with *Valdivia v. Brown*; (4) alternatively, Claims One, Two, Three, Six,

12 | Seven, and Ten fail to state a claim as a matter of law; (5) the Complaint as to the State of

13 | California is barred by the 11th Amendment; (6) the Complaint as to the individual Defendants is

14 | barred for failure to show their personal involvement; (7) the class allegations should be stricken

15 | as unnecessary and for failure to plead exhaustion; (8) Plaintiff lacks standing to bring this action

16 | for failing to show injury; and (9) the Complaint fails to comply with Rule 8(a)'s requirement of a

17 | short and plain statement of the case.

18 | This motion is based on the accompanying Memorandum of Points and Authorities,

19 | Defendants' Request for Judicial Notice, the Complaint, and any other evidence, materials, and

20 | argument presented at or before the time this matter is heard.

21 | **MEMORANDUM OF POINTS AND AUTHORITIES**

22 | **I.     INTRODUCTION**

23 | This case is the same case filed by the same attorney seven years ago. For this action,

24 | attorney Eric C. Jacobson has selected parolee Derek Wheat as his straw man. Mr. Jacobson's

25 | prior, identical case, *Jacobson v. Brown* (*Johnson I*), was already adjudicated by the Central

26 | District of California and is pending before the Ninth Circuit. An older parolee class action,

27 | *Valdivia v. Brown*, already finally adjudicated many of the parole revocation issues raised here.

28 | Mr. Jacobson cannot circumvent these final judgments by re-filing the same claims in a different

- 1 -

1  district court with a different plaintiff.

2  In *Johnson I*, five identical claims were dismissed without leave to amend because they

3  lacked any legal basis.  The remaining claims are pending before the Ninth Circuit.  Comity and

4  res judicata bar the attempt to re-litigate these claims here.

5  *Valdivia* was settled seven years ago by a stipulated injunction that resolved a myriad of

6  parole revocation issues.  Plaintiff's claims here overlap significantly with the *Valdivia* claims,

7  despite the Complaint's contrary assertions.  Plaintiff cannot bypass res judicata principles by

8  filing a new lawsuit to re-litigate issues already adjudicated.

9  In addition to res judicata and comity, numerous other grounds exist for dismissal.  In

10  particular, (1) several claims fail as a matter of law (as the Central District already determined in

11  *Johnson I*); (2) the State of California is immune from suit under the 11th Amendment; (3)

12  Plaintiff has failed to show the individual Defendants were personally involved; (4) the class

13  allegations are unnecessary because the injunctive relief Plaintiff seeks would impact parolees

14  more largely, and inmates have not pled exhaustion of administrative remedies; (5) Plaintiff does

15  not allege sufficient facts to establish standing; and (6) the Complaint violates Rule 8(a)'s

16  requirement of pleading a "short and plain statement of the claim."  Accordingly, the Complaint

17  should be dismissed.

18  ## II.     STATEMENT OF ISSUES TO BE DECIDED

19  • Should the entire Complaint be dismissed on principles of comity for overlapping

20  with *Johnson I* and *II*?

21  • Should Claims Two, Three, Six, Seven, and Ten be dismissed as barred by res

22  judicata for overlapping with *Johnson I*?

23  • Alternatively, should Claims One, Two, Three, Six, Seven, and Ten be dismissed

24  for failure to state a claim upon which relief can be granted?

25  • Should Claims Four through Nine be dismissed as barred by res judicata for

26  overlapping with *Valdivia v. Brown*?

27  • Should the State of California be dismissed under the 11th Amendment?

28  • Should the individual Defendants be dismissed for failure to meet Section 1983's

- 2 -

DEFS' NOTICE OF MOTION AND MOTION TO DISMISS; MPA ISO SAME
(CV 11-02026 SBA)                                                                    3053273.1

1   standard for suing state officials?

2   • Should the class allegations be stricken as unnecessary and for failure to plead

3   exhaustion?

4   • Should the Complaint be dismissed for lack of standing?

5   • Should the Complaint be dismissed for failure to comply with Rule 8?

6   **III.   STATEMENT OF FACTS**

7   **A.   Summary Of Plaintiff's Allegations.**

8   According to the Complaint, Plaintiff is a parolee who seeks to represent a class of current

9   and future parolees.  (Complaint ("Compl."), ¶¶4, 7.)  Plaintiff alleges that California runs a

10   "parole revocation mill" that "routinely cycle[s]" 70% of parolees into the "punitive confines of

11   California prison annually."  (*Id.*, ¶¶ 43-44.)  Plaintiff criticizes many facets of California's parole

12   system, including alleged due process deficiencies and failure to provide rehabilitative services.

13   (*Id.*, ¶12.)  According to Plaintiff, California's parole revocation system puts him "at continuous

14   ultra-high risk of illegal arbitrary, capricious and harassing search of his residence and person,

15   illegal periodic seizure and caging of his person, unjust summary administrative processing of

16   parole revocation charges without legally requisite due process (in multiple respects), and

17   punishment via re-imprisonment and unjust stigmatization in the community for the entirety of

18   WHEAT's 3-4 year period of statutory parole."  (*Id.*)

19   Based on these allegations, Plaintiff claims numerous constitutional violations,

20   purportedly falling outside the scope of *Valdivia v. Brown*: (1) violation of the 4th and 14th

21   Amendments for unreasonable search and seizures and imposing parole holds in violation of state

22   law; (2) violation of the 14th Amendment for re-incarcerating parolees and failing to provide

23   rehabilitation services for parolees; (3) violation of the 14th Amendment's Equal Protection

24   Clause for failing to treat parolees and initial sentence felons differently; (4) violation of the 5th,

25   6th, and 14th Amendments for depriving parolees of effective assistance of counsel; (5) violation

26   of the 6th and 14th Amendments for failing to provide parole revocation hearings of adequate

27   duration; (6) violation of the 6th and 14th Amendments for failing to provide parole revocation

28   hearings in a public facility; (7) violation of the 6th and 14th Amendments for failing to provide

- 3 -

1   jury trials for parole revocation; (8) violation of the 6th and 14th Amendments for failing to

2   provide parole revocation hearings before qualified and competent hearing officers; (9) violation

3   of the 14th Amendment for failing to provide a deliberative hearing process; (10) violation of the

4   8th and 13th Amendments for inhumane treatment and enslavement. (Compl., ¶¶214-23.) In

5   addition, in the Eleventh Claim for Relief, Plaintiff alleges numerous supplemental state law

6   claims. (Id., ¶224.)

7        To remedy these alleged "on-going and forthcoming" violations, Plaintiff seeks injunctive

8   relief against the State of California, Governor Edmund G. Brown, Jr. and the following officials

9   in the Governor's office, the Department of Corrections and Rehabilitation ("CDCR"), and the

10  Board of Parole Hearings ("BPH"): James Humes, Jeanne Woodford, Matthew L. Cate, Terri L.

11  McDonald, Scott M. Kernan, Wendy S. Still, Margarita E. Perez, Marvin E. Speed, Arnold P.

12  Fitt, Robert G. Doyle, Martin N. Hoshino, Rhonda W. Skipper-Dotta, George E. Lehman, Patricia

13  A. Cassady, Richard D. Jallins, William B. Crisologo, Alan Silver, Edward McNair, and Kenneth

14  E. Cater.

15  **B.    Plaintiff's Claims Overlap With *Valdivia v. Brown*.**

16       Plaintiff's claims overlap with a parolee class action currently pending in the Eastern

17  District of California, *Valdivia v. Brown*, Civ. S-94-0671 LKK/GGH ("*Valdivia*"). The *Valdivia*

18  class action was filed on May 2, 1994. (Request for Judicial Notice ("RJN"), Ex. M.) On

19  December 1, 1994, the *Valdivia* court certified a class consisting of: (1) California parolees who

20  are at large; (2) California parolees in custody as alleged parole violators, and who are awaiting

21  revocation of their state parole; and (3) California parolees who are in custody, having been found

22  in violation of parole and who have thereupon been sentenced to prison custody. (RJN, Ex. A.)

23  The operative Fifth Amended Complaint was filed on September 13, 2002 ("*Valdivia*

24  Complaint") and sought injunctive and declaratory relief based on the alleged denial of parolees'

25  right to counsel and to due process in connection with parole holds and revocation hearings in

26  violation of the 6th and 14th Amendments. (RJN, Ex. B.)

27       On March 9, 2004, the Court entered a Stipulated Order for Permanent Injunctive Relief

28  ("Injunction"). (RJN, Ex. C.) The defendants listed in the Injunction include the Governor of

- 4 -

1    California, the Secretary of the California Youth and Adult Correctional Agency, the Director of

2    CDC, the Commissioner and Chair of the Board of Prison Terms ("BPT"), Commissioners of the

3    BPT, and the Chief Deputy Commissioner of the BPT. (*Id.*) Individuals currently holding most

4    of these positions are named in the instant action.

5         The Injunction requires the *Valdivia* Defendants to implement policies and procedures

6    with respect to the parole revocation process, including (1) appointment of counsel; (2) a probable

7    cause hearing within a specified time; (3) a plan to provide hearing space for revocation hearings;

8    (4) standards, guidelines, and training for effective assistance of state-appointed counsel; (5)

9    access to evidence and the ability to subpoena and present witnesses and evidence to the same

10   extent as the state; and (6) the imposition of limitations on hearsay evidence. (RJN, Ex. C.)

11        On March 17, 2004, the *Valdivia* court issued an "Order Granting Final Approval of

12   Stipulated Order for Permanent Injunctive Relief." (RJN, Ex. D.) The court found that the

13   settlement was "fair, adequate and reasonable" and further provided: "Without affecting the

14   finality of this Order in any way, this Court hereby retains continuing jurisdiction over (a)

15   implementation of this settlement and the Stipulated Order for Permanent Injunctive Relief; (b)

16   hearing and determining applications for attorneys' fees, costs, interest and expenses in the Class

17   Action; and (c) all parties hereto for the purposes of enforcing and administering the Stipulated

18   Order for Permanent Injunctive Relief." (*Id.*) A stipulation regarding notice to the class was filed

19   on May 26, 2004. (RJN, Ex. E.) *Valdivia* is still pending and the Court continues to retain

20   jurisdiction. (RJN, Ex. M.)

21   **C.    Plaintiff's Claims Mirror Those Brought In *Johnson I and II*.**

22        Plaintiff's claims are a near mirror image of those brought in *Jacobson v. Brown*, Civ. 04-

23   3629-JFW ("*Johnson I*"). Plaintiff's attorney Eric Jacobson also represented the uncertified

24   parolee class in *Johnson I*, as attorney and on a third party standing theory. (RJN, Ex. F.)

25        *Johnson I* was filed on May 21, 2004. (RJN, Ex. N.) The Third Amended Complaint, the

26   operative pleading, was filed on August 31, 2005. (RJN, Ex. F.) *Johnson I* alleged eleven civil

27   rights claims based on violations of the 4th, 5th, 6th, 8th, 13th, and 14th Amendments and state

28

- 5 -

1   law.[1]  (*Id.*)  On August 1, 2007, the District Court dismissed the Second, Third, Sixth, Seventh,

2   and Tenth Claims with prejudice.  (RJN, Exs. G and H.)  The Court also dismissed all eleven

3   parolee claims for lack of standing to the extent they were asserted by attorney Jacobson.  (RJN,

4   Exs. G and H.)

5        On September 28, 2007, the Court ruled that *Johnson I* would not proceed as a class

6   action due to Mr. Jacobson's failure to timely seek class certification.  (RJN, Ex. J.)  The Court

7   then severed Johnson's claims and assigned a new case number, CV 07-6176-JFW (*Johnson II*).

8   (RJN, Ex. I.)  On September 7, 2008, Johnson's remaining constitutional claims were dismissed

9   for lack of standing, and his state law claims dismissed without prejudice to being filed in state

10  court.  (RJN, Ex. K.)  The dismissal of the constitutional claims is now before the Ninth Circuit.

11  (RJN, Ex. L.)

12                          **IV.   LEGAL STANDARDS**

13  **A.    Standard For Dismissal Under Rule 12(b)(6)**

14       A complaint may be dismissed pursuant to Rule 12(b)(6) when it lacks a cognizable legal

15  theory or when it contains insufficient facts under a cognizable legal claim.  *Robertson v. Dean Witter*

16  *Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  Moreover, "a complaint must contain sufficient

17  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

18  *Iqbal*, 129 S. Ct. 1937, 1949 (2009)(citing *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A

19  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

20  reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

21       In reviewing a 12(b)(6) motion to dismiss, a court must assume the truth of all factual

22  allegations in the complaint.  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).  This tenet

23  does not, however, apply to legal conclusions.  *Iqbal*, 129 S. Ct. at 1949.  "While legal

24  conclusions can provide the framework of a complaint, they must be supported by factual

25  allegations." *Id.* at 1950.  In ruling on a motion to dismiss, a court may consider "matters

26  properly subject to judicial notice."  *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d

27  _____

28  [1] *Johnson I* also contained claims by Mr. Jacobson for alleged retaliatory termination.

- 6 -

1   895, 900 (9th Cir. 2007).

2                              **V.     ARGUMENT**

3   **A.      The Entire Action Should Be Dismissed On Grounds Of Judicial Comity.**

4             According to federal comity principles, a district court may decline jurisdiction over an

5   action when a complaint involving the same parties and issues has already been filed in another

6   district. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982). "Normally,

7   sound judicial administration would indicate that when two identical actions are filed in courts of

8   concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no

9   purpose would be served by proceeding with a second action." *Id.* at 95. The doctrine is

10  "designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the

11  embarrassment of conflicting judgments." *Church of Scientology v. U.S. Dep't of Army*, 611 F.2d

12  738, 750 (9th Cir. 1979). This rule "should not be disregarded lightly." *Id.* at 750.

13            The factors a court considers when invoking comity (also referred to as the "first-to-file"

14  rule) are (1) chronology of the two actions; (2) similarity of the parties; and (3) similarity of the

15  issues. *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). To trigger the

16  rule, the lawsuits need only be substantially similar, not identical. *SASCO v. Byers*, 2009 U.S.

17  Dist. LEXIS 36886, *13 (N.D. Cal. 2009). Dismissal of the second-filed case is appropriate when

18  the prior court refused to allow the claims. *Quad/Tech Inc. v. Q.I. Press Controls*, 2010 U.S. Dist.

19  LEXIS 121063, *12 (N.D. Cal. 2010)(California court dismissed second-filed case that

20  Pennsylvania court had refused to allow by amended complaint). In addition, dismissal is

21  appropriate when the first-filed case has proceeded to an advanced stage. *Wright v. RBC Capital

22  Markets Corp.*, 2010 U.S. Dist. LEXIS 80165, (E.D. Cal. 2010)(California court dismissed

23  second-filed case when Minnesota action had proceeded to summary judgment and class

24  certification); *Church of Scientology*, 611 F.2d at 749 (comity best served by deference to court in

25  which case had progressed to judgment on merits, appeal, and remand).

26            To satisfy these comity principles, this action should be dismissed. *Johnson I*, filed in

27  2004, is the first-filed case. The parties to the cases are substantially similar: in both cases,

28  plaintiffs are represented by the same attorney and purport to represent a class of parolees, and the

                                         - 7 -

1    defendants include the Governor and several state officials employed with the State's correctional

2    agencies.  Finally, the issues are nearly identical.  A review of the Third Amended Complaint in

3    *Johnson I* and the instant Complaint shows that the eleven claims are mirror images (with the

4    exception of a minor addition to Claim One here),[2] thus satisfying the substantial similarity

5    requirement.

6         Given the advanced stage of the *Johnson* cases, this action should be dismissed.  *Johnson*

7    *I* proceeded through two motions to dismiss, the second of which resolved five claims on the

8    merits on August 1, 2007.  *Johnson II* originated on September 7, 2007 and the remaining six

9    claims were dismissed on September 7, 2008.  Those claims are currently on appeal to the Ninth

10   Circuit.  To allow Plaintiff to proceed in this Court on claims the Central District has dismissed

11   would contravene judicial comity.

12   **B.      Res Judicata Bars Claims Two, Three, Six, Seven, And Ten Based On *Johnson I*.**

13        Plaintiff's Claims Two, Three, Six, Seven, and Ten were finally adjudicated on the merits

14   in *Johnson I*.  These claims are barred by res judicata and should be dismissed.

15        "Res judicata, or claim preclusion, bars claims that should have been raised and resolved

16   in earlier litigation between the same parties."  *Comm. Telesystems Int'l v. Cal. Pub. Util. Com.*,

17   196 F.3d 1011, 1017 (9th Cir. 1999).  Res judicata applies whenever there is "(1) an identity of

18   claims, (2) a final judgment on the merits, and (3) privity between parties."  *Tahoe-Sierra Pres.*

19   *Council, Inc. v. Tahoe-Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003).  The

20   doctrine is meant "to protect the defendant from being harassed by repetitive actions based on the

21   same claim."  *Clements v. Airport Auth.*, 69 F.3d 321, 328 (9th Cir. 1995).

22        In *Johnson I*, the District Court dismissed without leave to amend the plaintiff's

23   constitutional claims for allegedly failing to provide rehabilitative services and reincarcerating

24   parolees (Claim Two); failing to treat parolees differently from felons serving their principal

25   sentences (Claim Three); failing to hold parole revocation hearings in public facilities (Claim

26   Six); failing to provide parolees with a jury for parole revocation hearings (Claim Seven); and

27   _____

28   [2] Claim One alleges violation of an alleged liberty interest based on state parole regulations. This
     claim fails as set forth in Section V.D.1.b *infra*.

DEFS' NOTICE OF MOTION AND MOTION TO DISMISS; MPA ISO SAME            3053273.1
(CV 11-02026 SBA)

1     violating the 8th and 13th Amendments for inhumane treatment and enslavement (Claim Ten).

2     The Court's dismissal of these five claims for failure to state a claim without leave to amend was

3     a final judgment for purposes of res judicata analysis. *Federated Dept. Stores, Inc. v. Moitie*, 452

4     U.S. 394, 399, n.3 (1981) (recognizing Rule 12(b)(6) dismissal is a "judgment on the merits");

5     *Gasho v. United States*, 39 F.3d 1420, 1438, n.17 (9th Cir. 1994) (rejecting argument that

6     dismissal of abuse of process claim for failure to state a claim was not "judgment" on the merits)

7     (citation omitted). Further, a comparison of the *Johnson I* Third Amended Complaint and the

8     instant Complaint reveals that these five claims are identical, thus satisfying the identity of claims

9     component of res judicata.

10        The privity component is also satisfied because of Plaintiff's relationship with his counsel,

11     Mr. Jacobson, who was both a plaintiff and plaintiffs' counsel in *Johnson I*. Privity exists if

12     "there is 'substantial identity' between parties, that is, when there is sufficient commonality of

13     interest." *Tahoe-Sierra*, 322 F.3d at 1081. A nonparty may be bound when he was "adequately

14     represented by someone with the same interests who [wa]s a party" to the suit. *Taylor v. Sturgell*,

15     553 U.S. 880, 894 (2008). "Representative suits with preclusive effect on nonparties include

16     properly conducted class actions . . . and suits brought by trustees, guardians, and other

17     fiduciaries." *Id.* A party's representation of a nonparty is "adequate" for preclusion purposes if

18     "(1) the interests of the nonparty and her representative are aligned, and (2) either the party

19     understood herself to be acting in a representative capacity or the original court took care to

20     protect the interests of the nonparty." *Id.* at 900 (internal citations omitted).

21        Mr. Jacobson was a plaintiff in *Johnson I*. He sought and intended to represent the

22     interests of his past and future parolee clients via a third party standing theory.[3] (RJN, Ex. F,

23     ¶12.) He was also counsel for himself and the putative parolee class (of which Plaintiff is a

24     member). Now, after the District Court dismissed five claims without leave to amend, Mr.

25     Jacobson seeks to bring the same claims through Plaintiff. Mr. Jacobson should not be permitted

26     to circumvent the District Court's ruling dismissing these claims by filing another identical class

27

28

[3] Mr. Jacobson's third party standing theory was denied by the District Court in its order dismissing several claims on August 1, 2007. (RJN, Exs. G and H.)

- 9 -

1   action with a different plaintiff.

2         Given Mr. Jacobson's relationship to *Johnson I*, and his current relationship as counsel to

3   Plaintiff, privity is established. *See, e.g., Del Campo v. Kennedy*, 491 F. Supp. 2d 891, 902 (N.D.

4   Cal. 2006) (privity established where class plaintiffs' issues and interests in two actions were the

5   same, plaintiffs sought the same remedies, and both cases were brought by the same counsel,

6   despite no class being certified); *see also Ferris v. Cuevas*, 118 F.3d 122, 129 (2d Cir. 1997)("But

7   we are not persuaded that a plaintiff who acts as his own and his co-parties' counsel, purports to

8   represent similarly situated persons, and fails adequately to represent himself and his co-parties,

9   may evade application of res judicata by handpicking a new plaintiff to represent . . ."). Having

10  chosen Mr. Jacobson to represent him in this action, Plaintiff cannot very well argue that Mr.

11  Jacobson did not adequately represent the class in *Johnson I*. Accordingly, Claims Two, Three,

12  Six, Seven, and Ten should be barred by res judicata.

13  **C.    Res Judicata Bars Claims Four, Five, Six, Seven, Eight, And Nine Based On *Valdivia***
14         ***v. Brown.***

15        Several of Plaintiff's claims are barred as a result of the Injunction in *Valdivia v. Brown*,

16  pending in the Eastern District of California. In particular, res judicata bars Plaintiff's claims for

17  violation of a parolee's right to: effective representation of counsel at parole revocation hearings

18  (Claim Four); a parole revocation hearing of sufficient duration (Claim Five); public hearings for

19  parole revocation (Claim Six); a jury for parole revocation hearings (Claim Seven); a parole

20  revocation hearing before a qualified and impartial hearing officer (Claim Eight); a deputy

21  commissioner who meaningfully considers factors in mitigation or a non-incarceral disposition

22  (Claim Nine). The *Valdivia* Injunction already addresses these alleged parolee rights.

23        The *Valdivia* Injunction is a final judgment. It is a consent decree, signed by the settling

24  parties and entered by the Court. It is well-settled that consent decrees are final judgments with

25  the force and effect of res judicata. *SEC v. Randolph*, 736 F.2d 525, 528 (9th Cir. 1984); *Gilmore*

26  *v. Inmates of San Quentin State Prison*, 220 F.3d 987, 1000 (9th Cir. 2000)("In its ordinary usage,

27  a consent decree is both a contract of settlement and a final judgment"); *Valerio v. Boise Cascade*

28  *Corp.*, 80 F.R.D. 626, 648 (N.D. Cal. 1978). That the *Valdivia* court retains jurisdiction to

- 10 -

1    monitor, supervise, and enforce the Injunction's terms does not change its preclusive effect.

2    *Stone v. City and County of San Francisco*, 968 F.2d 850 (9th Cir. 1992)("A consent decree is

3    considered a final judgment despite the fact that the district court retains jurisdiction over the

4    case.")

5            The parties are the same.  The *Valdivia* class consists of (1) California parolees at large;

6    (2) California parolees in custody as alleged parole violators, and who are awaiting revocation of

7    their state parole; and (3) California parolees who are in custody, having been found in violation

8    of parole and sentenced to prison custody.  (RJN, Ex. A at 17.)  As pled in the Complaint,

9    Plaintiff is a member of the *Valdivia* class.  Moreover, the putative class alleged by Wheat – "all

10   felons who are serving determinate sentences and will be released to parole (and/or probation)

11   terms and all current parolees who have not yet been discharged from parole" - falls within the

12   *Valdivia* class.

13           Several of Plaintiff's claims are subsumed by *Valdivia*.  "'[I]dentity of claims' does not

14   mean that an imaginative attorney may avoid preclusion by attaching a different legal label to an

15   issue that has, or could have, been litigated." *Tahoe-Sierra*, 322 F.3d at 1077-78.  Indeed, res

16   judicata "bars relitigation of all grounds of recovery that were asserted, *or could have been*

17   *asserted*, in a previous action between the parties . . ." *Id.* at 1078 (emphasis added).  The Ninth

18   Circuit considers several criteria to determine identity of claims: "(1) whether rights or interests

19   established in the prior judgment would be destroyed or impaired by prosecution of the second

20   action; (2) whether substantially the same evidence is presented in the two actions; (3) whether

21   the two suits involve infringement of the same right; and (4) whether the two suits arise out of the

22   same transactional nucleus of facts." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02

23   (9th Cir. 1982).  While no single criterion answers the res judicata question, the last criterion is

24   the most important. *Id.*

25           Plaintiff's Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Claims share the same

26   transactional nucleus of facts as the *Valdivia* claims.  (Compl., ¶¶217-22.)  Broadly speaking,

27   Plaintiff's claims focus on purported parolee rights arising in connection with parole revocation

28   hearings, just like the *Valdivia* class claims and settlement.  The *Valdivia* Complaint sets forth the

- 11 -

1   parolee class claims, and the Injunction embodies the class relief accorded based on the

2   Complaint after years of litigation.

3         Plaintiff's Fourth Claim alleges that parolees are deprived of effective assistance of

4   counsel because appointed defense attorneys lack job security. This claim arises from facts and

5   assertions underlying *Valdivia*. The *Valdivia* Complaint alleged that "pay scale and criteria for

6   attorney representation, set by the Defendants, renders any right to counsel that is afforded

7   meaningless, by making unduly burdensome and impossible the fair, full and reasonable

8   representation of parties." (RJN, Ex. B, ¶ 6.) Further, "the hourly rate of pay ($23.75) and limit

9   on hours (generally 6 hours) for representation of parolees is intended to and does discourage

10  competent representation of parolees." (*Id.*) The *Valdivia* Complaint also alleged "defendants

11  are following a pattern and practice of denying counsel to parolees in violation of existing

12  constitutional standards in almost all cases of parole revocation," (RJN, Ex. B, ¶ 66(e)), and "the

13  right to meaningful representation is denied by, among other things, the imposition of unfair and

14  unreasonable limits on counsel's time and fees." (RJN, Ex. B, ¶ 66(g).) Further, the *Valdivia*

15  Injunction required Defendants to appoint counsel for all parolees, (RJN, Ex. B, ¶ 11(b)(i)), and

16  to "develop standards, guidelines, and training for effective assistance of state appointed counsel

17  in the parole revocation process." (RJN, Ex. B, ¶ 17.)

18        Plaintiff's Fifth, Sixth, Seventh, Eighth, and Ninth Claims deal with the duration and

19  location of revocation hearings, the alleged bias and lack of qualifications of Deputy

20  Commissioners, the items Deputy Commissioners consider during revocation hearings, and the

21  lack of a jury at revocation hearings. These claims arise from the same facts and assertions

22  underlying *Valdivia* related to parole revocation hearings.

23        In particular, the *Valdivia* Complaint alleged "parole revocation hearings do not afford

24  due process because . . . parolees are denied a meaningful opportunity to appeal a denial of

25  counsel, to subpoena and present witnesses and evidence, or to confront and cross-examine

26  adverse witnesses." (RJN, Ex. B, ¶ 66(h).) In addition, the *Valdivia* Injunction provides many

27  safeguards that address the concerns raised in Plaintiff's Complaint, including requiring that

28  Defendants provide an "assessment of the availability of facilities and a plan to provide hearing

- 12 -

1   space for separate probable cause hearings," (RJN, Ex. B, ¶ 11(c)), "parolees' counsel shall have

2   the ability to subpoena and present witnesses and evidence to the same extent and under the same

3   terms as the state," (RJN, Ex. B, ¶ 21), "parolees shall be allowed to present evidence to defend

4   or mitigate against the charges and proposed disposition" which may be presented through

5   hearsay testimony, (RJN, Ex. B, ¶ 22), and "the use of hearsay evidence shall be limited by the

6   parolees' confrontation rights in the manner set forth under controlling law."  (RJN, Ex. B, ¶ 24.)

7   Further, the Remedial Plan Policy Outline attached to the Injunction states that "The Deputy

8   Commissioner . . . shall have the complete range of options to resolve the case" and "The Deputy

9   Commissioner shall not have the authority to adjust the return to custody assessment upward at or

10  during the probable cause hearing."  (RJN, Ex. B.)  All of these safeguards address the due

11  process issues and claims surrounding revocation hearings raised by Plaintiff's Claims Five

12  through Nine.

13      Proof of Plaintiff's Claims Four through Nine would involve substantially the same

14  evidence as the *Valdivia* claims, including evidence related to the procedures followed at parole

15  revocation hearings, the counsel provided to parolees at revocation hearings, the Deputy

16  Commissioner's options at revocation hearings, and the results of parole revocation hearings.

17      *Valdivia* was first filed in 1994 and the Injunction was entered in 2004.  The case is still

18  pending while the Defendants fully implement the Injunction, the *Valdivia* Plaintiffs' counsel

19  monitor Defendants' compliance, and the Court retains jurisdiction to enforce the Injunction.

20  Allowing Plaintiff to proceed with his Claims Four through Nine carries a significant risk of

21  destroying or impairing the rights and interests that were finally adjudicated in *Valdivia* for the

22  parolee class, including Plaintiff.

23  **D.**   **Alternatively, Claims One, Two, Three, Six, Seven, And Ten Each Fail To State A
        Claim Upon Which Relief Can Be Granted.**

24

25      **1.**   **Claim One Fails To State A Claim.**

        Plaintiff's First Claim for Relief has no legal basis.  Plaintiff alleges Defendants violated

26  the 4th and 14th Amendments by conducting unreasonable searches and seizures and imposing

27  parole holds in derogation of Plaintiff's state-created liberty interest.  (Compl., ¶214.)  Neither

28

- 13 -

DEFS' NOTICE OF MOTION AND MOTION TO DISMISS; MPA ISO SAME
(CV 11-02026 SBA)                                                    3053273.1

1    basis can support the claimed constitutional violation.

2           **a.**    **Warrantless Searches And Seizures Of Parolees Are Constitutional**
                **Under California Law.**

3

4          To support the 4th Amendment claim of unreasonable searches and seizures, Plaintiff

5    alleges generally that searches and seizures are undertaken without reasonable suspicion or

6    probable cause, without the basis or reasonable suspicion for the search/arrest put in writing,

7    without a warrant, and without sentencing judge involvement.  (Compl., ¶100.)  But Plaintiff's

8    allegations ignore that California requires that every prisoner eligible for parole "shall agree in

9    writing to be subject to search or seizure by a parole officer or other peace officer at any time of

10   the day or night, with or without a search warrant and with or without cause."  Cal. Pen. Code

11   §3067(a).  According to the U.S. Supreme Court, warrantless, suspicionless searches of parolees

12   do not violate the 4th Amendment.  *Samson v. California*, 547 U.S. 843, 856 (2006).  These

13   conditions demonstrate that parolees have "severely diminished expectations of privacy by virtue

14   of their status alone."  *Id.* at 852.  *Samson*'s rule extends to searches of a parolee's residence.

15   *United States v. Lopez*, 474 F.3d 1208, 1214 (9th Cir. 2007).

16         Given this authority, Plaintiff has no legal basis to challenge the constitutionality of

17   warrantless, suspicionless searches of parolees.  To the extent he alleges constitutional violations

18   based on searches and seizures undertaken "injudiciously, arbitrarily, capriciously and/or in a

19   harassing manner," (Compl., ¶ 100(a)), the allegation is conclusory and the Complaint contains

20   no facts to support it.

21          **b.**    **There Is No State-Created Liberty Interest In Imposing Parole Holds**
                **In Particular Circumstances.**

22         Plaintiff alleges a new liberty interest, based on state law, "to a rehabilitative parole

23   system featuring sparing and discriminate resort to revocation of parole only in instances where a

24   parolee is dangerous or a flight risk."  (Compl., ¶ 25.)  No such liberty interest has been

25   recognized by the courts and, thus, should not be created here.[4]

26         To impose liability under Section 1983, a plaintiff must prove a violation of federal statute

27

28   [4] The Ninth Circuit has recognized a liberty interest in California's parole scheme based on Cal.
Penal Code § 3041, but has not addressed 15 Cal. Code Regs. §§2600-01.

- 14 -

1   or the U.S. Constitution. 42 U.S.C. § 1983; *Carlo v. City of Chino*, 105 F.3d 493, 497 (9th Cir.

2   1997). Violation of state law may also create liberty interests that are entitled to the procedural

3   protections of the Due Process Clause of the 14th Amendment. *Carlo*, 105 F.3d at 497. The

4   Ninth Circuit uses a mandatory language test to determine whether state law creates a liberty

5   interest under the 14th Amendment. *Id.* To make this determination, courts consider whether the

6   state law contains "(1) substantive predicates governing official decisionmaking and (2) explicitly

7   mandatory language specifying the outcome that must be reached if the substantive predicates

8   have been met." *James v. Rowlands*, 606 F.3d 646, 656 (9th Cir. 2010). The U.S. Supreme Court

9   has cautioned that "the search for a negative implication from mandatory language in prison

10   regulations has strayed from the real concerns undergirding the liberty protected by the Due

11   Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483 (1995)(considering regulations related to

12   disciplinary segregation).

13       Applying the mandatory language test, Sections 2600-2601 plainly fail to create a liberty

14   interest. According to these regulations, a parole agent may impose a parole hold only when

15   probable cause exists to believe the parolee has violated parole and the parole agent determines

16   the parolee (1) is a danger to himself, (2) is a danger to persons or property of another, or (3) may

17   abscond. 15 Cal. Code Regs. §§ 2600-2601. (Compl., ¶¶ 22-23.) Based on the regulations' plain

18   language, parole agents have discretion to impose a parole hold. This permissive language does

19   not pass the mandatory language test to require a rehabilitative parole system where revocation is

20   imposed sparingly.

21       Plaintiff's claim rests on the improper negative implication that if a parole agent may

22   impose a parole hold only under certain circumstances, then there exists an implied liberty

23   interest to a rehabilitative parole system. (Compl., ¶ 25.) But Plaintiff's leap in logic strays from

24   the real concerns undergirding Due Process liberty interests. *See Sandin*, 515 U.S. at 483.

25   Further, Plaintiff admits there is no constitutional right to rehabilitative programs (Compl., ¶ 24),

26   undermining his claimed liberty interest.

27       *Carlo,* cited in the Complaint, does not require a different conclusion. (Compl., ¶ 25.) In

28   *Carlo*, the Ninth Circuit analyzed California Penal Code Section 851.5, which repeatedly uses the

- 15 -

1   word "shall," and provides: "(a) Immediately upon being booked, and, except where physically

2   impossible . . . an arrested person has the right to make at least three completed phone calls . . . ."

3   Carlo, 105 F.3d at 495-496.  The Carlo court decided that "the right of an arrestee not to be held

4   incommunicado involves substantial liberty interest." Id. at 496.  In contrast, the permissive,

5   discretionary language of Sections 2600-2601 does not require the Court to find a liberty interest

6   here.

7        Accordingly, Plaintiff's First Claim for Relief should be dismissed with prejudice.

8        **2.    As The Court Held In *Johnson I*, Claim Two Fails To State A Claim.**

9        Plaintiff cannot state a claim under the 14th Amendment based on frequent reincarceration

10  of parolees or deprivation of effective community rehabilitation services. (Compl., ¶215.)  First,

11  so long as the *Morrissey* safeguards are met, the mere fact of reincarcerating a parole violator

12  does not violate substantive due process, regardless of the parolee's post-revocation confinement.

13  *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)(substantive due process claims

14  based on abuse of executive power are evaluated under the "shocks the conscience" standard).

15  Second, as Plaintiff admits in the Complaint, there is no constitutional right to rehabilitative

16  programs, whether for parolees or inmates. (Compl., ¶24.)  *Rhodes v. Chapman*, 452 U.S. 337,

17  348 (1982); *Coackley v. Murphy*, 884 F.2d 1218, 1221 (9th Cir. 1989); *Rizzo v. Dawson*, 778 F.2d

18  527, 531 (9th Cir. 1985).  Thus, Claim Two should be dismissed with prejudice.

19       **3.    As The Court Held In *Johnson I*, Claim Three Fails To State A Claim.**

20       Plaintiff has failed to allege any equal protection violation.  For Claim Three, Plaintiffs

21  invoke the 14th Amendment in asserting that Defendants violate parolees' equal protection rights

22  by allegedly treating differently-situated individuals - parolees and convicted felons serving their

23  initial sentences - the same. (Compl., ¶¶126-138.)  In particular, Plaintiff challenges Defendants'

24  conduct in (1) remanding parole violators to "prison environments devoid of effective and

25  meaningful rehabilitative opportunities"[5] where they are co-mingled with convicted felons

26  _____

27  [5] To the extent this claim seeks relief for any alleged lack of rehabilitative services in prison
    environments, there is no constitutional right to rehabilitative programs. *Rhodes*, 452 U.S. 348;
28  *Coackley*, 884 F.2d 1221; *Rizzo*, 778 F.2d at 531.

- 16 -

1    serving their initial sentence; and (2) subjecting felons to "parole-type supervision" after

2    expiration of their determinate sentences "without any individualized scrutiny of said felons'

3    residual criminal tendencies, level of rehabilitation or need for parole-type supervision upon their

4    release from prison." (Compl., ¶216.)

5        The Equal Protection Clause prohibits the state from treating similarly situated individuals

6    differently. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). But Plaintiff

7    attempts to flip this principle and require the state to treat differently situated individuals

8    differently. No such protection is required by the Equal Protection Clause. *See Roush v. White*,

9    389 F. Supp. 396, 401 (N.D. Ohio 1975)(rejecting argument that "if it is illegal to provide

10   dissimilar treatment for persons similarly situated, it must also be a violation of the Equal

11   Protection Clause to give similar treatment to those dissimilarly situated.") Moreover, Plaintiff

12   has failed to plead any facts showing discriminatory intent as is required for a Section 1983 claim

13   based on the Equal Protection Clause. *See Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d

14   1022, 1026 (9th Cir. 1998). Plaintiff's Third Claim should be dismissed with prejudice.

15       **4.    As The Court Held In *Johnson I*, Claim Six Fails To State A Claim.**

16       Plaintiff's claim that the 6th Amendment requires parole revocation hearings to be held in

17   a public forum is not supported by law. (Compl., ¶219.) The 6th Amendment does not apply to

18   parole revocation proceedings. *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972); *United States v.*

19   *Hall*, 419 F.3d 980, 985 (2005)(rejecting assertion that *Crawford v. Washington* extended the 6th

20   Amendment to revocation of supervised release proceedings). This is because "the revocation of

21   parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in

22   such a proceeding does not apply to parole revocations." *Morrissey*, 408 U.S. at 480. Parolees

23   do not receive the full protections afforded criminal defendants because revocation only deprives

24   an individual of "the conditional liberty properly dependent on observance of special parole

25   restrictions." *Id.* Thus, Plaintiffs' Sixth Claim should be dismissed with prejudice.

26       **5.    As The Court Held In *Johnson I*, Claim Seven Fails To State A Claim.**

27       Plaintiff's claim that parolees are entitled to a jury trial in parole revocation hearings fails

28   as a matter of law. (Compl., ¶220.) It is well-settled that the full range of rights due a defendant

- 17 -

1   in a criminal prosecution, including the right to a jury trial, does not apply to revocation hearings.

2   *Morrissey*, 408 U.S. at 480 (parole revocation); *Gagnon v. Scarpelli*, 411 U.S. 778, 782

3   (1973)(probation revocation); *Johnson v. United States*, 529 U.S. 694, 700 (2000)(supervised

4   release). "Given the previous conviction and the proper imposition of conditions, the State has an

5   overwhelming interest in being able to return the individual to imprisonment without the burden

6   of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole."

7   *Morrissey*, 408 U.S. at 483; *see also United States v. Knights*, 534 U.S. 112, 120 (2001)(noting

8   that probationers "face revocation of probation, and possible incarceration, in proceedings in

9   which the trial rights of a jury and proof beyond a reasonable doubt, among other things, do not

10  apply.") Plaintiff's Seventh Claim for Relief should be dismissed with prejudice.

11          **6.      As The Court Held In *Johnson I*, Claim Ten Fails To State A Claim.**

12          Plaintiff fails to demonstrate that the 8th or 13th Amendments have been violated.

13  (Compl., ¶223.) First, Plaintiffs' alleged violation of the 13th Amendment based on claims of

14  enslavement fails on its face because the 13th Amendment has an express exception for convicts.

15  It provides, in part, "Neither slavery nor involuntary servitude, except as a punishment for crime

16  *whereof the party shall have been duly convicted*, shall exist within the United States, or any

17  place subject to their jurisdiction." U.S. Const. amend. XIII, §1 (emphasis added). By its own

18  terms, the 13th Amendment does not apply to parole revocation proceedings. Further,

19  reincarceration for parole violation is part of the original criminal sentence. *Johnson v. United*

20  *States*, 529 U.S. 694, 701 (2000) (postrevocation penalties relate to the original offense); *United*

21  *States v. Brown*, 59 F.3d 102, 104-05 (9th Cir. 1995) ("Parole and probation are part of the

22  original sentence" and revocation of parole is reinstatement of sentence for underlying crime, not

23  punishment for conduct leading to revocation). Reincarceration of parole violators is not akin to

24  enslavement.

25          Second, Plaintiff's alleged 8th Amendment violation fails because reincarceration for a

26  parole violation does not constitute disproportionate punishment. The 8th Amendment bars

27  punishments that involve the "unnecessary and wanton infliction of pain," or that are "grossly out

28  of proportion to the severity of the crime." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). It also

- 18 -

1   bars conduct not intended as punishment that denies prisoners "the minimal civilized measure of

2   life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Again, revocation of parole is not

3   punishment for a parole violation, but a continuation of punishment for the original crime.

4   *Brown*, 59 F.3d at 104-05. Thus, comparing parole revocation to punishment for a different crime

5   cannot demonstrate any disproportionality. Plaintiff's allegations do not implicate the 8th or 13th

6   Amendments, and the Tenth Claim for Relief should be dismissed with prejudice.

7   **E.      The State Of California Is Immune From Liability Under 42 U.S.C. § 1983.**

8           State governments are immune from § 1983 suits under the 11th Amendment. *See Quern*

9   *v. Jordan*, 440 U.S. 332, 368-369 (1979) ("§ 1983 does not explicitly and by clear language

10   indicate on its face an intent to sweep away the immunity of the States"); *Will v. Mich. Dep't of*

11   *State Police*, 491 U.S. 58, 66 (1989) ("That Congress, in passing § 1983, had no intention to

12   disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance in that

13   respect was made clear in our decision in *Quern*"). The claims against the State of California

14   should be dismissed.

15   **F.      No Section 1983 Claim Is Stated Against The Individual Defendants.**

16           Plaintiff sues several individual state officials for alleged past and future deprivations of

17   civil rights. (*See e.g.* Compl., ¶¶ 4, 5, 12, 14.) But state officials cannot be sued under Section

18   1983 unless they played an affirmative part in the alleged deprivation of rights. *King v. Atiyeh*,

19   814 F.2d 565, 568 (9th Cir. 1987). Plaintiff's allegations fall short.

20           "Supervisory officials are not liable for actions of subordinates on any theory of vicarious

21   liability." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). Rather, a supervisor may be only

22   be liable if there exists either "(1) his or her personal involvement in the constitutional

23   deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and

24   the constitutional violation." *Id.*

25           Plaintiff does not allege that the individual Defendants personally participated in any

26   aspect of Plaintiff's parole revocation. Plaintiff vaguely refers to a "conspiracy of 'juridically

27   linked' Defendants against the interests of Plaintiff WHEAT and the parolee. .. class he aspires to

28   represent." (Compl., ¶¶ 49, 50.) Vague allegations of conspiracy do not suffice. *See Hansen*,

- 19 -

885 F.2d at 646 (dismissal of Section 1983 claims was proper when there were only vague allegations of conspiracy involving police chief). And while Plaintiff repeatedly refers to violations he anticipates the individual Defendants *will* inflict, he fails to state which Defendants have already personally committed any alleged constitutional violations as to him. (Compl., ¶¶ 69, 70.) Having failed to alleged any particular conduct by the individual Defendants, Plaintiff cannot very well show a causal connection between such non-existent conduct and an alleged constitutional violation.

Further, "parole board officials are entitled to absolute quasi-judicial immunity for decisions 'to grant, deny, or revoke parole' because these tasks are 'functionally comparable' to tasks performed by judges." *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir. 1981). All claims against the BPH Defendants for performing these tasks must thus be dismissed.

Plaintiff's allegations, even viewed in their most favorable light, are woefully insufficient to create liability under Section 1983 as to each of the individual Defendants. Accordingly, the claims against the individual Defendants should be dismissed.

**G.    The Class Allegations Should Be Stricken Under Rule 12(f).**

Pursuant to Rule 23(c), "the court must - at an early practicable time - determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). "Sometimes the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim . . ." *General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982). A number of courts have recognized the ability to strike class allegations under Rule 12(f). *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (striking class allegations where individual inquiries would be required); *Pashek v. Ariz. Bd. of Regents*, 82 F.R.D. 62, 64 (D. Ariz. 1979) (striking class allegations where court found inadequate representation); *Barrett v. Avco Fin. Servs.*, 292 B.R. 1, 11 (D. Mass. 2003); *Board of Educ. v. Climatemp, Inc.*, 1981 U.S. Dist. LEXIS 11092 (N.D. Ill. 1981) (striking class allegations where numerosity requirement not satisfied).

When, as here, the relief sought by an individual plaintiff would produce the same results as a class action, a class action is inappropriate. *James v. Ball*, 613 F.2d 180, 186 (9th Cir. 1979)

1  (*rev'd on other grounds, Ball v. James*, 451 U.S. 355 (1981)) (class certification is inappropriate

2  when "the relief sought will, as a practical matter, produce the same result as formal class-wide

3  relief."); *Sokol v. New United Motor Mfg., Inc.*, 1999 U.S. Dist. LEXIS 20215, at 17-18 (N.D.

4  Cal. 1999)(class certification denied because all putative class members would benefit from

5  injunction issued on behalf of single plaintiff). Plaintiff's claims for injunctive relief plainly

6  encompass the interests of absent class members.  The Complaint seeks relief in the form of

7  systemwide changes to California's parole revocation system.  There is nothing particular to

8  Plaintiff in the Complaint that would preclude application to other parolees, nor does Plaintiff

9  seek individual remedies.  Accordingly, Plaintiff's class allegations should be stricken under Rule

10  12(f).

11       Alternatively, to the extent the class includes "all felons who are serving determinate

12  sentences," and Plaintiff has failed to allege that those currently imprisoned individuals have

13  exhausted their administrative remedies as required by the Prison Litigation Reform Act[6], that

14  portion of Plaintiff's class allegations should be stricken.

15  **H.    Plaintiff Lacks Standing to Bring This Action Under Rule 12(b)(1).**

16       Plaintiff wholly fails to allege facts showing any injuries that can support a constitutional

17  claim.  To establish standing, Plaintiff must show that he was personally injured, "not that injury

18  has been suffered by other, unidentified members of the class" to which he belongs and purports

19  to represent. *Warth v. Seldin*, 422 U.S. 490, 502 (U.S. 1975), citing *O'Shea v. Littleton*, 414 U.S.

20  488, 494 (1974).  Unless Plaintiff can demonstrate the requisite case or controversy between

21  himself and Defendants, he may not seek relief on behalf of himself or any other member of the

22  class. *Id.*  Standing is properly raised in a Rule 12(b)(1) motion to dismiss. *Chandler v. State*

23  *Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

24       Indeed, Plaintiff alleges very few facts specific to himself, other than background

25  information and his parolee status.  His other allegations either fail to state a claim or constitute

26

27  [6] 42 U.S.C. § 1997e(a) provides that: "No action shall be brought with respect to prison
conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or
any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

28  such administrative remedies as are available are exhausted."

- 21 -

1    conclusions not entitled to consideration. First, though he alleges he was not offered or provided

2    "any effective rehabilitative educational or vocational services or family and personal counseling

3    whatsoever by CDCR personnel," (Compl., ¶66), there is no constitutional right to rehabilitative

4    services. *Rhodes*, 452 U.S. at 348; *Coackley*, 884 F.2d at 1221; *Rizzo*, 778 F.2d at 531. And to

5    the extent Plaintiff seeks to assert a denial of rights under the *Valdivia* Injunction, a separate

6    lawsuit in a different district is not the proper vehicle. *See, e.g., Hooker v. Simon*, 2010 U.S. Dist.

7    LEXIS 97568 (E.D. Cal. 2010)(class member required to pursue remedies through Court's

8    consent decree).

9           Next, Plaintiff alleges in conclusory terms, that he "has repeatedly experienced in the past

10   and is overwhelmingly likely to experience in the future mistreatment as a parolee in each of the

11   respects outlined above." (Compl., ¶ 42.) Assuming Plaintiff is referring to the outline at

12   paragraph 38, no facts illustrate how Plaintiff's constitutional rights were violated, such as when

13   the violations occurred, where they occurred, and who perpetrated them. Without these basic

14   factual details, Plaintiff cannot state a claim to relief that is plausible on its face. *Iqbal*, 129 S. Ct.

15   at 1940. The conclusory allegations in paragraph 38, and throughout the Complaint (*i.e.*, ¶198),

16   can only provide a framework for the Complaint; they cannot stand on their own without factual

17   support. *Id.* Without the facts to show injury, Plaintiff lacks standing to proceed.

18          Moreover, Plaintiff's failure to allege facts showing that Defendants have "repeatedly

19   engaged in the injurious acts in the past," is fatal to his ability to show "a sufficient possibility

20   that they will engage in them in the near future to satisfy the 'realistic repetition' requirement."

21   *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001). Plaintiff cannot simply rely on vague and

22   conclusory allegations about conduct he anticipates will happen in the future. (Compl., ¶¶12, 59,

23   61, 69, 70.) Rather, he must allege facts showing past injurious conduct. Because he has not

24   done so, Plaintiff's claims are not ripe and, therefore, must be dismissed for lack of standing.

25   **I.      The Complaint Fails To Comply With Rule 8(a).**

26          Failure to comply with Rule 8 is grounds for dismissal. *McHenry v. Renne*, 84 F.3d 1172,

27   1179-80 (9th Cir. 1996). Rule 8(a) requires that complaints shall contain "a short and plain

28   statement of the claim showing that the pleader is entitled to relief." "Each averment of a

- 22 -

1    pleading shall be simple, concise, and direct." Fed. R. Civ. P. 8(e). "Prolix, confusing

2    complaints . . impose unfair burdens on litigants and judges." *McHenry*, 84 F.3d at 1179. In

3    *McHenry*, the Ninth Circuit affirmed the dismissal of a complaint consisting of a "rambling"

4    narrative containing "immaterial background information," and "storytelling or political griping,"

5    in which claims for relief incorporated numerous paragraphs of confusing factual allegations and

6    then made "'perfunctory reference to a legal claim said to arise from these undifferentiated

7    facts.'" *Id.* at 1176-77.

8           Similarly, Plaintiff's Complaint is overflowing with immaterial background information,

9    is replete with argument unnecessarily spanning 72 pages, and should be dismissed. Some of the

10   most flagrant examples of such material include excerpts from newspaper articles, websites and

11   the Little Hoover Commission Report (*e.g.*, ¶¶ 19(b); 44, including footnote 44; 55(c); 57,

12   footnote 23; 121(a), including footnote 34; and 146(a)); lengthy digressions alleging a

13   conspiratorial solidarity between the Governor and labor unions, among other topics (*e.g.*, ¶¶ 50,

14   126, and 133); descriptions of interviews (*e.g.*, ¶56(c)); and blatant legal argument (*e.g.*, ¶¶ 19(c),

15   footnote 7; 26; 27; 28; 29; 34; 47(a)-(b); and 157-158).

16          In addition, the Complaint is laced with inappropriate, often hyperbolic, narrative,

17   including at paragraphs 43 (discussing the "unforgiving clutches of California's 'parole

18   revocation mill'--an inhumane and barbaric bureaucratic maw unique in the nation and indeed,

19   unheard of . . . throughout the entire civilized world"); 109 (alleging parole agents conduct

20   parolee residential searches in a "brutal para-military harassing manner"); 117 (alleging the

21   parole system "creates hydraulic pressures upon agents to view parolees as 'bodies'"); 164

22   (alleging that parole revocation hearings are held outside the "sanitizing sunlight of

23   accountability"); 175 (alleging personnel conduct legally irregular hearings to create more

24   customers for their "prison industrial complex which has become a veritable California Gulag");

25   189 (comparing the alleged parole revocation "mill" to "Black Codes imposed by white

26   southerners following the end of the Reconstruction"). (*See also, e.g.*, Compl., at ¶¶ 31, 55(a),

27   80(a), 81(d), 124, 186.)

28          Like the complaint in *McHenry*, much of the Complaint reads "like a magazine story

- 23 -

DEFS' NOTICE OF MOTION AND MOTION TO DISMISS; MPA ISO SAME        3053273.1
(CV 11-02026 SBA)

1   instead of a traditional complaint." 84 F.3d at 1179. Accordingly, the Court should dismiss the

2   Complaint for failure to make a short and plain statement of Plaintiff's claims.

3                              **VI.     CONCLUSION**

4         Defendants respectfully request that this Court dismiss the Complaint on the following

5   grounds: (1) judicial comity bars the entire action based on overlap with *Jacobson v. Brown*; (2)

6   res judicata bars Claims Two, Three, Six, Seven, and Ten based on overlap with *Jacobson v.*

7   *Brown*; (3) res judicata bars Claims Four through Nine based on overlap with *Valdivia v. Brown*;

8   (4) alternatively, Claims One, Two, Three, Six, Seven, and Ten fail to state a claim as a matter of

9   law; (5) the Complaint as to the State of California is barred by the 11th Amendment; (6) the

10  Complaint as to the individual Defendants is barred for failure to plead facts establishing personal

11  involvement; (7) the class allegations should be stricken as unnecessary and failure to plead

12  exhaustion; (8) Plaintiff lacks standing to bring this action for failing to show injury; and (9) the

13  Complaint fails to comply with Rule 8(a)'s requirement of a short and plain statement of the case.

14  Upon dismissal of the federal claims, Defendants request that this Court decline to exercise

15  supplemental jurisdiction over the state law claims.

16        Defendants respectfully request an order dismissing all claims, with prejudice, and for

17  such other relief as this Court deems just and proper.

18                              **CERTIFICATION**

19        The undersigned counsel certifies that the parties have met and conferred regarding this

20  motion as required by the Court's standing order.

21  DATED:  June 30, 2011                    HANSON BRIDGETT LLP

22

23                                  By: /s/ Megan Oliver Thompson
                                        PAUL B. MELLO
24                                      WALTER R. SCHNEIDER
                                        MEGAN OLIVER THOMPSON
25                                      RENJU P. JACOB
                                        Attorneys for Defendants
26

27

28
                                       - 24 -