UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DEREK WHEAT, a current parolee, et al., | Case No:  C 11-02026 SBA |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING PART DEFENDANTS' MOTION TO DISMISS** |
| vs. | |
| STATE OF CALIFORNIA, et al., | Dkt. 31 |
| Defendants. | |

Plaintiffs Derek Wheat ("Wheat") and Antonio Martinez ("Martinez"), currently California parolees, and Shandon Davis ("Davis"), a felon currently serving a determinate state sentence (collectively "Plaintiffs"), bring the instant action pursuant to 42 U.S.C. § 1983 on behalf of themselves and current and future parolees and probationers alleging that California's parole and probation revocation system violates their constitutional rights. As Defendants, Plaintiffs have named the State of California, Governor Edmund G. Brown, Jr., and a host of state officials associated with the California Department of Corrections ("CDCR") and Board of Parole Hearings ("BPH").[1]  On July 26, 2011, Plaintiffs filed a First Amended Complaint ("FAC"), which is the operative pleading before the Court.

_____

[1] The Defendants identified in the case caption are: (1) Edmund G. Brown, Jr., Governor of California, in his official and individual capacity; (2) James Humes, Office of the Governor, Executive Secretary for Administration, Legal Affairs and Policy, in his official and individual capacity; (3) Matthew L. Cate, Secretary of the CDCR, in his official and individual capacity; (4) Jeanne Woodford, Senior Fellow for Corrections Policy, UC Berkeley & Special Advisor to the Governor, in her official and individual capacity; (5) Terri L. McDonald, CDCR, Chief Deputy Secretary for the Adult Operations Division, in

The parties are presently before the Court on Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.  Dkt. 31.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' motion.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.      BACKGROUND

### A.      THE INSTANT LITIGATION

Plaintiffs are current and allegedly prospective parolees in the State of California. First Am. Compl. ("FAC") FAC ¶¶ 7, 11, 16, Dkt. 21.  Wheat and Martinez are presently under active parole supervision by the CDCR.  Id. ¶¶ 7, 11.  Davis is presently serving a fifteen-year determinate sentence and is not alleged to be on parole.  Id. ¶ 94-95.  Plaintiffs purport to represent a class of "all felons who are serving determinate sentences and will be released to parole (and/or probation) terms and all current parolees who have not yet been discharged from parole."  Id. ¶ 222.  They bring this action to challenge various "due

her official and individual capacity; (6) Scott M. Kernan, CDCR, Undersecretary for the Adult Operations Division, in his official and individual capacity; (7) Wendy S. Still, CDCR & Special Advisor to the Governor, in her official and individual capacity; (8) Roberto J. Ambroselli, CDCR, Senior Advisor for the Division of Adult Parole Operations, in his official and individual capacity; (9) Margarita E. Perez, CDCR, Deputy Director for the Adult Operations Division, in her official and individual capacity; (10) Marvin E. Speed, CDCR, Parole Administrator I, in his official and individual capacity; (11) Arnold P. Fitt, CDCR, Parole Agent III, Unit Supervisor Berkeley Parole Office, in his individual and official capacity; (12)  Robert G. Doyle, Chairperson of the California BPH, in his official and individual capacity; (13) Martin N. Hoshino, Executive Officer of the BPH, in his official and individual capacity; (14) Rhonda W. Skipper-Dotta, BPH, Chief Commissioner, in her official and individual capacity; (15) Kenneth E. Cater, BPH, Chief Deputy Commissioner, in his official and individual capacity; (16) George E. Lehman, BPH, Associate Chief Deputy Commissioner, in his official or individual capacity; (17) Patricia A. Cassady, BPH, Associate Chief Deputy Commissioner, in her official or individual capacity; (18) Richard D. Jallins, BPH, Associate Chief Deputy Commissioner, in his official and individual capacity; (19) William B. Crisologo, BPH, Associate Chief Deputy Commissioner, in his official and individual capacity; (20) Alan Silver, BPH, Deputy Commissioner, in his official and individual capacity; (21) Edward McNair, BPH, Deputy Commissioner, in his official and individual capacity; and (22) unknown current officials Nos. 1-10 of the State of California, CDCR or BPH, in their official or individual capacities.

process deficiencies" within California's parole revocation system.  Id. ¶ 3.  They generally accuse "juridically linked" Defendants, i.e., officials at the Governor's Office, the CDCR and the BHP, of operating a "parole revocation mill" to sustain California's "burgeoning prison-industrial complex."  Id. ¶¶ 69, 73, 75.

Claims One through Ten of the FAC assert violations of the Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments of the United States Constitution, as follows:   (1) unreasonable search and seizure of parolees, and the unlawful deprivation of privacy and liberty (Claim One); (2) violation of due process based on the frequent re-incarceration of parolees in punitive jail and prison environments, and the deprivation of effective rehabilitation services (Claim Two); (3) violation of equal protection based on identical treatment of differently-situated persons (Claim Three); (4) deprivation of the right to effective assistance of counsel (Claim Four); (5) violation of due process based on improper hearings of inadequate duration (Claim Five); (6) denial of the right to a public trial (Claim Six); (7) denial of right to jury trial (Claim Seven); (8) violation of due process based on improper hearings before non-neutral, non-detached and unqualified hearing officers (Claim Eight); (9) violation of due process based on biased, unfair and unjust dispositions (Claim Nine); and (10) unlawful infliction of cruel and unusual punishment, and enslavement or subjection to the badges and incidents thereof (Claim Ten).  Id. ¶¶ 245-254.  Claim Eleven is an amalgam of supplemental state claims which are summarily alleged as:

> [F]alse arrest and imprisonment; assault and battery; malicious prosecution and adjudication of parole revocation charges; abuse of process; obstruction of justice; willful failure to implement AB109 (in the particulars beneficial to parolees); invasion of privacy; intentionally wrongful, reckless or negligent hiring and supervision; non-provision of meaningful rehabilitative services in the community; non-provision of effective machinery for responding to complaints ("602s") and administrative appeals; civil rights violations under Civil Code 52.1; and intentional infliction of emotional distress.

Id. ¶ 255.

Plaintiffs seek a litany of remedies, including, without limitation, a court order: directing CDCR to end their warrantless searches and seizures of parolees; id. ¶ 257(A); directing the CDCR and BPH to provide rehabilitative services to parolees; id.; increasing the time allotted for parole revocation hearings; id.; "*disestablishing* California's unconstitutional aberrant non-rehabilitative system of parole administration and revocation," and transferring the powers of the Secretary of the CDCR over parole administration and revocation procedures to a court appointed receiver, id. ¶¶ 257(C); and directing the immediate implementation of Assembly Bill 109 ("AB 109").

### B.   PRIOR LITIGATION

#### 1.   Valdivia v. Wilson

The present action is not the first legal challenge involving California's parole revocation system. On May 2, 1994, six individuals and the Prisoners Rights Union filed § 1983 suit in the Eastern District of California against the State of California and various state officials. See Valdivia v. Wilson, E.D. Cal. No. Civ. S-94-0671 LKK; Defs.' Request for Judicial Notice ("RJN") Ex. A, Dkt 23-1; Ex. M, Dkt. 23-7. The plaintiffs alleged that they were denied legal counsel at their parole revocation hearings in violation of the Fourteenth Amendment. Id. Ex. A at 2-3. On December 1, 1994, the Honorable Lawrence K. Karlton certified a class consisting of: (1) California parolees at large; (2) California parolees in custody, as alleged parole violators; and (3) California parolees who are in custody, having been found in violation of parole and who have been sentenced to custody. Id. at 3.

On March 9, 2004, Judge Karlton entered a Stipulated Order for Permanent Injunctive Relief. Id. Ex. C, Dkt. 23-1. The injunction requires the State of California and responsible officials to implement policies and procedures with respect to the parole revocation process, including: (1) the appointment of counsel; (2) setting a probable cause hearing within a specified amount of time; (3) a plan to provide hearing space for revocation hearings; (4) standards, guidelines and training for effective assistance of state-appointed counsel; (5) access to evidence and the ability to subpoena and present witnesses

and evidence to the same extent as the State; and (6) limitations on the use of hearsay evidence.  Id.  Judge Karlton approved the settlement and final injunction on March 17, 2004, and continues to maintain jurisdiction over the settlement.  Id. Ex. D.

### 2. <u>Jacobson v. Schwarzenegger</u> and <u>Johnson v. Schwarzenegger</u>

On May 21, 2004, Eric Jacobson ("Jacobson")—the same attorney who filed the instant action—filed a putative class action in the Central District of California naming himself and parolee Eric Johnson ("Johnson") as plaintiffs.  See <u>Jacobson v. Schwarzenegger</u>, E.D. Cal. No. CV-04-3629 JFW.  Although Jacobson was not a parolee, he alleged that he had third party standing.  Id. Ex. F, Dkt. 23-3.  Jacobson and Johnson purported to represent a class of California parolees whose rights continued to be violated by California's parole revocation system, notwithstanding the relief afforded in the <u>Valdivia</u> action.  Id. ¶ 13.  The Third Amended Complaint, the operative pleading, alleged eleven claims which are virtually identical to the eleven claims alleged in the instant action.  <u>Compare id.</u> ¶ 162-172 <u>with</u> FAC ¶¶ 245-256.  The remaining seven claims pertained to Jacobson specifically and related to his termination from the attorney appointment list for parolees.

On January 16, 2007, Magistrate Judge Jennifer Lu issued a 65-page Report and Recommendation to the assigned judge, the Honorable John F. Walter, in which she recommended dismissing Claims Two, Three, Six, Seven and Ten, with prejudice.  Id. Ex G, Dkt. 23-5.  In addition, Magistrate Judge Lu recommended dismissing Jacobson as a plaintiff from Claims One through Eleven for lack of standing, and severing Johnson's remaining claims (i.e., Claims One, Four, Five, Eight, Nine and Eleven) from Jacobson's pro se claims.  Id.  On August 1, 2007, Judge Walter adopted the magistrate judge's Report and Recommendation, which became the order of the district court.  Id. Ex. H.  Judge Walter subsequently issued an Order Severing Claims and directed the clerk to assign a new case number to the claims being asserted by Johnson.  Id. Ex. I.  The severed case was styled as <u>Johnson v. Schwarzenegger</u>, Case No. CV-07-6176 JFW.[2]

---

[2] For simplicity, the Court refers to these actions as "the <u>Jacobson/Johnson</u> action."

On September 28, 2007, the court ruled that Johnson could not proceed on his claims on a class basis on the ground that his attorney, Jacobson, failed to file a motion for class certification within the time prescribed by the Central District Local Rules.  RJN Ex. J, Dkt. 23-6.  On February 4, 2008, Judge Walter dismissed Claims One, Four, Five, Eight and Nine with prejudice for lack of standing based on the fact that Johnson was not a parolee.  Id. Ex. M at 3, Dkt. 23-6.  Judge Walter declined to exercise supplemental jurisdiction over Claim Eleven, which was based on state law.  Id. at 4.  Jacobson appealed the dismissal of Johnson's claims to the Ninth Circuit.  Id. Ex. L.  The Ninth Circuit's docket, which is available through PACER, shows that the appeal remains pending.  See Ninth Cir. No. 08-55481.

## C.    THE INSTANT MOTION

In response to the FAC, Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  Defendants contend that: (1) Plaintiffs lack standing; (2) Plaintiffs' request for the immediate implementation of AB 109 presents a non-justiciable political question; (3) the claims against the State of California are barred by the Eleventh Amendment; (4) Plaintiffs' claims are barred as a matter of judicial comity and res judicata by previously-litigated lawsuits filed in the Central and Eastern District of California; (5) Plaintiffs have failed to allege sufficient facts to establish liability against the individual Defendants; (6) the FAC fails to comport with Rule 8(a); and (7) certain of Plaintiff's claims are barred as a matter of law.[3]

---

[3] Plaintiffs argue that Defendants should be judicially estopped from bringing a motion to dismiss based on alleged public statements by Governor Brown that California's correctional system is a "revolving door for . . . parole violators . . . ."  FAC ¶¶ 33-34, 82(c); see Pls.' Opp'n to Defs.' Mot. to Dismiss ("Opp'n") at 1, Dkt. 44.  Plaintiffs' judicial estoppel argument is misplaced, as the doctrine is inapplicable to out-of-court statements.  See Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990).  Nor is the judicial estoppel doctrine applicable to the government.  See Heckler v. Cmty. Health Servs., Inc., 467 U.S. 51, 60 (1984).  Likewise, Defendants' motion is not a disguised motion for summary judgment.  It is well settled that a court may properly consider matters of which it may properly take judicial notice without converting the motion to dismiss to one for summary judgment.  E.g., Dunn v. Castro, 621 F.3d 1196, 1204 n.6 (9th Cir. 2010).

1    **II.     LEGAL STANDARD**

2        **A.     RULE 12(B)(1)**

3        A complaint may be dismissed under Rule 12(b)(1) for lack of subject matter

4    jurisdiction.  See, e.g., Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122

5    (9th Cir. 2010) ("Because standing and ripeness pertain to federal courts' subject matter

6    jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss.") (citations

7    omitted).  "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face

8    of the pleadings or by presenting extrinsic evidence."  Warren v. Fox Family Worldwide,

9    Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).  Where, as here, the challenge is based on the

10   pleadings, the court assumes the truth of the plaintiff's factual allegations and draws all

11   reasonable inferences in its favor.  Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009).

12   "Once challenged, the party asserting subject matter jurisdiction has the burden of proving

13   its existence."  Rattlesnake Coalition v. United States Envtl. Protection Agency, 509 F.3d

14   1095, 1102 n.1 (9th Cir. 2007).

15       **B.     RULE 12(B)(6)**

16       A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the

17   plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support

18   a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

19   1990).  In deciding a Rule 12(b)(6) motion, courts generally "consider only allegations

20   contained in the pleadings, exhibits attached to the complaint, and matters properly subject

21   to judicial notice."  Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).  The court is

22   to "accept all factual allegations in the complaint as true and construe the pleadings in the

23   light most favorable to the nonmoving party."  Outdoor Media Group, Inc. v. City of

24   Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

25       To survive a motion to dismiss for failure to state a claim, the plaintiff must allege

26   "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v.

27   Twombly, 550 U.S. 544, 570 (2007).  The plaintiff must allege facts sufficient to "nudge

28   his claims ... across the line from conceivable to plausible."  Ashcroft v. Iqbal, 129 S.Ct.

1   1937, 1951 (2009) (quoting Twombly, 550 U.S. at 570).  "[A] plaintiff's obligation to

2   provide the 'grounds' of his 'entitlement to relief' requires more than labels and

3   conclusions, and a formulaic recitation of the elements of a cause of action will not do."

4   Twombly, 550 U.S. at 555.  Stated another way, the allegations must "give the defendant

5   fair notice of what the … claim is and the grounds upon which it rests."  Id.  In the event

6   dismissal is warranted, it is generally without prejudice, unless it is clear the complaint

7   cannot be saved by any amendment.  See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir.

8   2005).

9   III.   **DISCUSSION**

10       A.   **JURISDICTIONAL ISSUES**

11       Defendants posit two threshold jurisdictional arguments.  First, they contend that

12  Plaintiffs lack standing based on their alleged failure to allege an injury-in-fact and that

13  they face a "realistic repetition" of injury.  Mot. at 13-14.  Second, Defendants request that

14  the Court strike Plaintiffs' demand for an order for the immediate implementation of AB

15  109 on the ground that it presents a non-justiciable political question.  Id. at 14-15.  The

16  Court discusses these contentions, in turn.

17           1.   **Standing**

18       The party invoking federal jurisdiction bears the burden of establishing standing.

19  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  The "manner and degree of

20  evidence" required to show standing varies according to the stage of litigation.  Id.  "At the

21  pleading stage, general factual allegations of injury resulting from the defendant's conduct

22  may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace

23  those specific facts that are necessary to support a claim.'"  Id.  (internal citation omitted).

24  Where a class has not been certified, the Court analyzes the standing of the named plaintiffs

25  and not the class as a whole.  Nelson v. King County, 895 F.2d 1248, 1255 (9th Cir. 1990).

26  To establish standing, plaintiffs must plead an actual or imminent injury; "speculative"

27  injury will not suffice.  Lujan, 504 U.S. at 561.  Plaintiffs may demonstrate actual injury by

28  identifying an actual right that has been violated.  Armstrong v. Davis, 275 F.3d 849, 865

(9th Cir. 2001).  Moreover, in seeking prospective injunctive relief, plaintiffs must demonstrate that they are "realistically threatened by a repetition of [the injury]."  Los Angeles v. Lyons, 461 U.S. 95, 109 (1993).  The Ninth Circuit characterizes this additional showing as the "realistic repetition" requirement.  Armstrong, 275 F.3d at 861.

The Court finds that Plaintiffs have presented sufficient allegations of actual injury for purposes of standing.  The FAC avers that Plaintiffs were injured by Defendants' parole revocation procedures as a whole, beginning with arbitrary decisions to re-arrest and continuing through the final revocation decision.  More specifically, Defendants are alleged to have violated Plaintiffs' constitutional rights in a number of ways, including: (1) the imposition of parole holds in derogation of a protected liberty interest, FAC ¶ 138; (2) denial of effective assistance of counsel, id. ¶¶ 169-180; (3) failure to hold revocation hearings before qualified officers, id. ¶¶ 200-206; and (4) failure to provide unbiased and fair revocation hearings, id. ¶¶ 207-210.  The conduct alleged is sufficient to constitute an actual injury.  See Armstrong, 275 F.3d at 865.

Plaintiffs have also demonstrated that they are realistically threatened by future harm.  Realistic repetition of injury may be demonstrated where the harm alleged is part of a "pattern of officially sanctioned . . . behavior, violative of the plaintiffs' constitutional rights."  LaDuke v. Nelson, 762 F.2d 1318, 1324 (9th Cir. 1985) (internal citation omitted).  "[W]here the defendants have repeatedly engaged in the injurious acts in the past, there is a sufficient possibility that they will engage in them in the near future to satisfy the 'realistic repetition' requirement."  Armstrong, 275 F.3d at 861.  Furthermore, when a named plaintiff asserts injuries that have been inflicted upon a class of plaintiffs, the court may consider the harm asserted by the class to determine if there is a credible threat that the named plaintiff's injury will recur.  Id.

Standing in the instant action is based on the threat of future injury from an allegedly systemically defective parole revocation system.  In the FAC, Plaintiffs allege that approximately 70% of parolees in California are remanded to prison for alleged parole violations.  FAC ¶¶ 56, 70.  This is approximately double the national average of 35%.  Id.

¶¶58, 70.  Additionally, while "good cause" is found in 92% of revocation cases, "fully half" of alleged parole violators are either factually innocent or remanded for minor rule infractions such as "changing employment" or "failing to follow instructions."  <u>Id.</u> ¶¶ 71-72; <u>see</u> 15 Cal. Code Regs. §26464.1.  As such, a parolee may be subject to parole revocation proceedings without engaging in unlawful conduct.  These statistics illustrate the unique degree to which parolees are subject to the challenged revocation procedures.  Parolees are, by definition, already subject to Defendants' oversight and control.  Consequently, they are far more likely to experience recurrent injuries than are plaintiffs who have attempted to challenge practices that only randomly affect members of the general public.  Accordingly, the Court finds that Plaintiffs have alleged sufficient facts to establish standing at this juncture and therefore DENIES Defendants' motion to dismiss for lack of subject matter jurisdiction.[4]

## 2.   Political Question

"A nonjusticiable political question exists when, to resolve a dispute, the court must make a policy judgment of a legislative nature, rather than resolving the dispute through legal and factual analysis."  <u>E.E.O.C. v. Peabody Western Coal Co.</u>, 400 F.3d 774, 785 (9th Cir. 2005).  Here, Plaintiffs seek an order from this Court "directing the Defendants to implement *forthwith* in good faith, reformist legislation AB 109 in its particulars beneficial to parolees."  FAC ¶ 258.  Plaintiffs acknowledge that the provisions of that legislation are to take effect July 1, 2013, but propose that it should be implemented immediately.  Opp'n at 14.  The timetable for implementing legislation clearly involves a policy judgment of a legislative nature which is unsuitable for resolution through legal or factual analysis by the Court.  Accordingly, the Court GRANTS Defendants' motion to strike Plaintiff's demand for immediate implementation of AB 109.

---

[4] Plaintiffs Wheat and Martinez are on parole and have each had their parole revoked on at least one prior occasion.  However, Davis is not on parole, but rather, is serving a determinate sentence in Alameda County Jail.  As such, Davis is not subject to Defendants' oversight and control, and his injury is speculative.  For that reason, Davis lacks standing to proceed as a named Plaintiff, and is dismissed from the present action.

**B.   PRECLUSION BASED ON PRIOR LAWSUITS**

Defendants contend that the instant action is barred by the prior litigation in the Central and Eastern District of California.  Specifically, Defendants argue that in view of the overlap with Johnson and Valdivia, the instant action should be dismissed on grounds of judicial comity.  Alternatively, Defendants contend that Plaintiffs' claims are barred by res judicata.

**1.   First-to-File Rule**

"There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982).  "When two cases involving the same parties and issues are filed in two federal districts, the first-to file rule permits the second district to exercise its discretion to transfer, stay, or dismiss the second suit in the interests of efficiency and judicial economy." AmerisourceBergen Corp. v. Roden, 495 F.3d 1143, 1156 (9th Cir. 2007).  In exercising its discretion to transfer, dismiss or stay an action under the first to file rule, a court should consider:  (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues.  Z-Line Designs, Inc. v. Bell'O Int'l LLC, 218 F.R.D. 663, 665 (N.D. Cal. 2003) (Whyte, J.).  The first-to-file rule, however, is not to be "mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 844 (9th Cir. 1986) (citation omitted).

Defendants contend that the Court should dismiss the instant action on the ground that the claims alleged in this case overlap significantly with Valdivia and Jacobson/Johnson.  Mot. at 3-4.  The record shows that both of those actions preceded the filing of the present action; however, the parties and issues are not identical.  In addition, Valdivia and Jacobson/Johnson are no longer active cases.  Valdivia concluded in 2004 upon entry of the permanent injunction, and the dismissal order in Jacobson/Johnson is on appeal.  Given the termination of those actions, it is questionable whether the *dismissal* of

the instant action would further the goals of judicial comity, efficiency and administration. See Northwest Forest Resource Council v. Dombeck, 107 F.3d 897, 901 (D.C. Cir. 1997) (comity did not justify dismissal of claims where at least some new plaintiffs were present in later action and proceedings in first filed action were no longer pending); ASUSTeK Computer Inc. v. AFTG-TG LLC, No. 5:CV 11-00192-EJD, 2011 WL 6845791, at *14 (N.D. Cal. Dec. 29, 2011) (declining to apply the first-to-file rule where the earlier-filed action has been terminated) (Davila, J.).  Therefore, the Court DENIES Defendants' motion to dismiss based on the first-to-file rule.[5]

### 2.   Res Judicata

Defendants next argue that Plaintiffs' claims are barred by res judicata by virtue of Jacobson/Johnson and Valdivia. Mot. at 4-7. "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980).   Res judicata applies when there is (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties.  Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 322 F.3d 1064, 1077 (9th Cir. 2003).  Claim preclusion is an affirmative defense which may be raised if it is apparent from the face of the complaint or is not based on any disputed issues of fact.  Jones v. Bock, 549 U.S. at 215 (complaint may be subject to dismissal under Rule 12(b)(6) when affirmative defense

---

[5] Notwithstanding the above, the question remains whether the instant action should be transferred to the Central District of California.  With the exception of Plaintiffs' allegations regarding the enactment of AB 109, the claims alleged by Plaintiff in this action are virtually indistinguishable from those asserted in the Jacobson/Johnson action.  As discussed, the Central District ruled against Johnson on his constitutional claims and precluded him from proceeding as a class action due to Jacobson's failure to comply with the court's Local Rules.  It was only after Judge Walter dismissed the action in its entirety that Jacobson filed this action, based on the same legal theories and claims.  In doing so, it appears that Jacobson may be engaged in forum shopping.  That aside, the interests of judicial comity, efficiency and sound administration may militate in favor of transferring the action to the same court which has already had the opportunity to address the claims asserted in this case.  However, since Defendants only sought the dismissal of the action and not its transfer, the Court will direct the parties to show cause why the action should or should be transferred to the Central District of California.

1   appears on its face) (citation omitted); Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir.

2   1984) (affirming order granting motion to dismiss based on res judicata).

3                    *a)*      ***Jacobson/Johnson***

4        Defendants contend that Claims Two, Three, Six, Seven and Ten are barred by res

5   judicata as a result of Judge Walter's Order dismissing identical claims in

6   Jacobson/Johnson.  For purposes of res judicata, a judgment entered on a motion to dismiss

7   is a final judgment on the merits.  Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 399

8   n.3 (1981); see also Ruple v. City of Vermillion, 714 F.2d 860, 862 (8th Cir. 1983).

9   However, Defendants have failed to show that the same parties or their privies are involved

10  in both actions.  The plaintiffs in the Jacobson/Johnson action were Eric Jacobson, who

11  asserted third party standing, and Eric Johnson, a parolee.  The district court dismissed

12  Jacobson's claims for lack of standing and declined to certify a class of California parolees.

13  Since Defendants have not demonstrated that any of the named Plaintiffs in this action were

14  parties or privies to the Jacobson/Johnson action, the doctrine of res judicata is inapt.  See

15  Aguilera v. Pirelli Armstrong Tire Corp., 223 F.3d 1010, 1013 n.1 (9th Cir. 2000) (no res

16  judicata effect as to unnamed members of a purported but uncertified class).  Defendants'

17  motion to dismiss Claims Two, Three, Six, Seven and Ten on the basis of res judicata is

18  DENIED.

19                    *b)*      ***Valdivia***

20       Defendants next argue that res judicata bars Plaintiffs' Claims Four through Nine

21  because those claims are encompassed by the stipulated permanent injunction entered in

22  Valdivia.  A consent decree is a final judgment for res judicata purposes.  SEC v. Randolph,

23  736 F.2d 525, 528 (9th Cir. 1984).  However, Defendants have not clearly demonstrated an

24  identity of claims between Valdivia and the present action.  Res judicata bars relitigation of

25  "any claims that were raised or could have been raised in the prior action."  Owens v.

26  Kaiser Foundation Health Plan, Inc., 224 F.3d 708, 713 (9th Cir. 2001).  "The central

27  criterion in determining whether there is an identity of claims between the first and second

28

adjudications is 'whether the two suits arise out of the same transactional nucleus of facts.'" Id. at 714 (internal citation omitted).

Defendants argue, with a high degree of generality, that Plaintiffs are attempting to relitigate "purported parolee rights arising in connection with parole revocation proceedings."  Mot. at 6.  While both actions address due process violations in the administration of California's parole revocation system, "due process" is not a single claim, such that all alleged violations of the right would have to be brought in one suit.  Cf. Hiser v. Fanklin, 94 F.3d 1287, 1291 (9th Cir. 1996) ("right of access to courts" is not considered a single claim and previous inmate class action did not bar prisoner's newly raised claim). A review of the record presented reveals that Valdivia did not address the specific due process violations raised in the instant suit.  Moreover, Plaintiffs Wheat and Martinez were not paroled at the time of the Valdivia action, and did not suffer parole revocations until 2009.  FAC 10, 14.  Plaintiffs' claims did not accrue until such time as they were on parole and subject to deficient parole revocation hearings.  Because Plaintiffs' injuries did not occur until after the Valdivia litigation, the injuries clearly did not arise out of the same transactional nucleus of facts, and could not have been brought in the Valdivia action. Hiser, 94 F.3d at 1291. Accordingly, Defendants motion to dismiss Claims Four, Five, Six, Seven, Eight, and Nine on the ground that relitigation of those claims is precluded by Valdivia is DENIED.

### C.   COMPLIANCE WITH RULE 8

Federal Rule of Civil Procedure 8 requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Each allegation must be "simple, concise, and direct."  Id. 8(d)(1).  This requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)."  McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for

what wrongs, fails to perform the essential functions of a complaint." Id. at 1180. "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges." Id. at 1179.

"In McHenry, the Ninth Circuit affirmed dismissal of a complaint that consisted of a rambling narrative containing immaterial background information, and storytelling or political griping, in which each claim for relief incorporated 122 paragraphs of confused factual allegations and then made perfunctory reference to a legal claim said to arise from these undifferentiated facts." Jacobson v. Schwarzenegger, 357 F. Supp. 2d 1198, 1205 (C.D. Cal. 2004) (internal citation and quotation marks omitted) (quoting McHenry, 84 F.3d at 1176-1177). Plaintiffs' FAC here is similarly defective. Like the complaint in Jacobson—which was drafted by the same counsel representing Plaintiffs in this action— the FAC contains "page after page of descriptive and often hyperbolic narrative, quotations from articles, descriptions of interviews and legal argument," as well as lengthy but vague allegations of conspiracy. 357 F. Supp. 2d at 1205. The FAC in this case is 79 pages long, contains 259 paragraphs and includes 61footnotes, replete with quotations from or citations to extraneous materials. See e.g., FAC ¶¶ 21, n.6; 34; 35; 51-55; 56(a), n. 20; 60; 64, n. 22; 70, n. 26; 73(a)-(b); 76; 81(c), n. 31; 82(b)-(c); 83(a)-(b), n. 34; 150, n. 46; 151(a), n. 47; 156; 163; 187; 188.[6]

Each of the eleven claims for relief is set out in a single perfunctory paragraph that incorporates, in whole or in part, 117 paragraphs of discursive allegations. FAC ¶¶ 245-54. Additionally, it is impossible to determine from the FAC which claims are alleged against which Defendant, or what relief is sought in relation to each claim, see FAC ¶¶ 257-259. In that regard, the FAC "scrupulously [avoids] any pretense of complying with [Rule] 8," and demonstrates a "kind of garrulity in pleading [which] is flagrantly inconsistent with Rule 8." Lippit v. Raymond James Financial Serv., Inc., 340 F.3d 1033, 1036, 1040 (9th Cir. 2003) (where complaint contained passages from newspaper article and New York Stock

---

[6] The Court also notes that Plaintiffs' opposition brief contains 39 single-spaced footnotes, covering more than half of the allotted 15 pages, in an apparent attempt to circumvent this Court's page limits.

1  Exchange disciplinary decision to show defendant's allegedly deceptive practices in other

2  cases).

3        Plaintiffs respond that what constitutes a short and plain statement depends on the

4  circumstances of the case, and argue that the FAC is of necessity 79 pages due to "the

5  multi-dimensional (diabolical) nature of the deadly serious parole revocation mill-like

6  system at issue," as well as the need to comply with the pleading requirements for

7  supervisory liability, the "Twombly/Iqbal plausibility standard," and the class allegations.

8  Opp'n at 10-11, n.25.  What Plaintiffs fail to acknowledge, however, is that it is not merely

9  the length of the FAC at issue, but rather its utter lack of clarity and the irrelevance of many

10  allegations to the specific claims raised.  The manner of pleading employed in the FAC

11  wholly obfuscates the legal and factual bases for the claims by failing to clearly connect the

12  conduct and conditions charged with the claims asserted, as well as by surrounding

13  pertinent allegations with unduly extraneous material.  For these reasons, the Court

14  GRANTS Defendants' motion to dismiss based on Plaintiffs' failure to comply with Rule 8.

15  The Court now turns to Defendants' specific challenges under Rule 12(b)(6) to determine

16  which claims Plaintiffs will be granted leave to amend.

17        **D.**    **SUFFICIENCY OF THE ALLEGATIONS**

18          **1.**    **Claims as to the State of California**

19        Defendants next contend that the State of California is immune from suit under the

20  Eleventh Amendment.  It is well-settled that, absent a waiver of immunity, § 1983 suits

21  against a state are barred by the Eleventh Amendment.  Quern v. Jordan, 440 U.S. 332, 340

22  (1979).  A suit naming the state as defendant is "proscribed by the Eleventh Amendment …

23  [and] [t]his jurisdictional bar applies regardless of the nature of the relief sought."

24  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100-101 (1984) (internal

25  citations omitted).  While § 1983 suits for prospective injunctive relief may be brought

26  against state officials, the state itself is immune from such suits.  Frew ex rel. Frew v.

27  Hawkins, 540 U.S. 431, 437 (2004).

28

Plaintiffs counters that the State of California has waived its immunity by virtue of the Bane Civil Rights Act, California Civil Code §52.1.  Opp'n at 12.  However, Plaintiffs have failed to cite—and the Court has been unable to identify—any authority supporting that assertion.  The Bane Civil Rights Act permits a civil action for injunctive or equitable relief against a "*person or persons*, whether or not acting under color of law."  Cal. Civ. Code § 52.1(a) (emphasis added).  The statute does not provide for a right of action directly against the State.  Accordingly, Defendants' motion to dismiss Plaintiffs' claims against the State of California is GRANTED.[7]  Because the State is immune, granting leave to amend would be futile and the claims against the State are dismissed without leave to amend.

### 2.        Claims as to Individual State Officials

Defendants next argue that the claims alleged against the individual state officials should be dismissed for failure to allege facts establishing their personal participation in any alleged deprivation of rights.  Mot. at 12-13.  Additionally, Defendants argue that claims against the BPH Defendants should be dismissed based on absolute immunity for parole-related decisions.  Id.

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Barry v. Fowler, 902 F.2d 770, 772 (9th Cir. 1990).  Individual government officials are not subject to suit under § 1983 on a theory of respondeat superior.  Polk County v. Dodson, 454 U.S. 312, 325 (1981).  Thus, to state a civil rights claim against an individual defendant, the plaintiff must allege facts showing either the defendant's "personal involvement" in the constitutional deprivation or a "casual connection" between the defendant's wrongful conduct and the constitutional violation.

---

[7] Plaintiffs' Claims One through Ten are predicated on 42 U.S.C. § 1983 and are dismissed as to the State of California.  Defendants do not separately address Claim Eleven, which sets forth a laundry list of supplemental state law claims, pursuant to this Court's jurisdiction under 28 U.S.C. §1367(a).  FAC ¶ 1, 255.  However, the Eleventh Amendment bars the adjudication of pendant state law claims against non-consenting state defendants in federal court.  See Pennhurst, 465 U.S. at 120.  Accordingly, Claim Eleven is also dismissed as to the State of California without leave to amend.

1   Hansen v. Black, 885 F.2d 642, 645-646 (9th Cir. 1989); accord Starr v. Baca, 633 F.3d

2   1191, 1194 (9th Cir. 2011).

3          The allegations of the FAC, though extensive, are insufficient to demonstrate the

4   personal involvement of each of the individually named Defendants in the alleged

5   constitutional deprivations that form the basis of the action.  Instead of specifying the role

6   of each individual Defendant in the alleged violations, Plaintiffs merely allege each claim

7   against "[a]ll Defendants"  and only generally alleges that "by virtue of the powers,

8   authority and conduct of their state employment," the individual Defendants are "each

9   legally responsible and liable" for Claims One through Eleven.  FAC ¶¶ 108, 245-255.

10  This type of non-specific pleading is insufficient to impose liability on the individual

11  Defendants.  See Hansen, 885 F.2d at 645-46.

12         Plaintiffs point out that the FAC alleges that each of the individual Defendants:

13  (1) presides over and supervises their respective departments, id. ¶ 109; (2) is "complicitous

14  in" the violations set forth, id. ¶ 110; (3) has the power and responsibility to remedy said

15  violations, id. ¶ 111, and (4) knowingly conspired with their co-defendants to perpetrate the

16  harms inflicted upon parolees in the revocation process, id. ¶ 117.  However, these factually

17  barren allegations are insufficient to state a claim under § 1983. See Lacey v. Maricopa

18  County, 649 F.3d 1118, 1136-1137 (9th Cir. 2011) ("[a] plaintiff must allege facts, not

19  simply conclusions, that show that an individual was personally involved in the deprivation

20  of his civil rights."); Burns v. County of King, 883 F.2d 819, 822 (9th Cir.1989)

21  (conclusory allegations of conspiracy insufficient to state a valid § 1983 claim).

22         With regard to the BHP Defendants, parole board officials are entitled to immunity

23  for decisions to grant, deny or revoke parole.  Sellars v. Procrunier, 641 F.2d 1295, 1303

24  (9th Cir. 1981).  However, parole officers are not entitled to immunity with regard to all

25  parole-related functions.  See Swift v. California, 384 F.3d 1184 (9th Cir. 2004) (holding

26  parole officers not entitled to absolute immunity for conduct in investigating parole

27  violations, ordering issuance of parole hold and arrest of parolee, or recommending

28  initiation of parole revocation proceedings).  Since Plaintiffs claims against the BHP

Defendants do not appear to be based on their decision to grant, deny or revoke parole, the doctrine of absolute immunity does not warrant their dismissal at this stage of the proceedings.

In sum, Defendants' motion to dismiss Plaintiffs' claims against the individual state officials for failure to allege personal involvement in the alleged deprivation of rights is GRANTED.[8]  Because it is possible that Plaintiffs may be able to cure that deficiency, the dismissal is with leave to amend.   Defendants' motion to dismiss as to the BHP Defendants is DENIED.

### 3.   Challenge to Specific Claims

#### a)   Claim One

In Claim One, Plaintiffs allege that parolees' Fourth and Fourteenth Amendment rights are violated as a result of "unreasonable searches and seizures" and the imposition of parole holds "in derogation of [parolees'] state-created liberty interest."  FAC ¶ 245. California requires that every prisoner eligible for parole "agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause."  Cal. Penal Code § 3067(a). As to parolees subject to California's parole-search agreement, the Supreme Court and Ninth Circuit have held that warrantless, suspicionless searches of parolees and their residences do not violate the Fourth Amendment.  Samson v. California, 547 U.S. 843, 856 (2006); United States v. Lopez, 474 F.3d 1208, 1214 (9th Cir. 2007).  In light of that

---

[8] Plaintiffs' Claims One through Ten are predicated on 42 U.S.C. § 1983 and are dismissed as to the individual state officials.  Again, Defendants do not separately address supplemental Claim Eleven.  Claim Eleven, however, is no more than a list of potential state law claims, devoid of any factual allegations.  Those "threadbare recitals" of possible causes or a cause of action are insufficient to survive a motion to dismiss.  Iqbal, 129 S.Ct. at 1949-50.  Furthermore, while the list includes cognizable tort claims such as assault and battery, it also includes claims unrecognized at law, such as "willful failure to implement AB 109" and "non-provision of meaningful rehabilitative services in the community."  Id. As such, the FAC fails to give Defendants "fair notice" of what Claim Eleven is or the "grounds upon which it rests."  Twombly, 550 U.S. at 555.  Accordingly, Claim Eleven is dismissed, with leave to amend.

1   authority, Plaintiffs lack a legal basis to challenge the constitutionality of warrantless,

2   suspicionless searches of parolees.[9]

3       Plaintiffs also allege that parole agents "impose parole holds in derogation of

4   parolees' state-created liberty interest in not having such a parole hold placed absent a risk

5   assessment and determination that the parolee meets the criteria set forth in 15 Cal. Code

6   Regs. §§ 2601 or 2616(a)(14)." FAC ¶ 138.  Defendants argue that no such liberty interest

7   exists.  However, Defendants apparently misconstrue Plaintiffs' claim as one asserting a

8   broader liberty interest in a "rehabilitative parole system."  Mot. at 10.  Instead, the alleged

9   liberty interest appears to be more accurately articulated as the right of a parolee to remain

10  out of custody, absent specific criteria justifying a parole hold.[10]  As such, Defendants'

11  motion to dismiss Claim One, insofar as it pertains to parole holds, is without merit.

12      Accordingly, to the extent that Plaintiffs are alleging a Fourth Amendment violation

13  based on warrantless, suspicionless searches of parolees, the Court GRANTS Defendants'

14  motion to dismiss Claim One, which is dismissed without leave to amend.  The remainder

15  of Claim One is dismissed with leave to amend for failure to provide a short and plain

16  statement of the claims, as set forth above.

17                 *b)*    ***Claim Two***

18      In Claim Two, Plaintiffs allege that the deprivation of "effective rehabilitation

19  services" and the "unusually frequent rate" of re-incarceration in punitive jail and prison

20  environments constitute a violation of parolees' substantive due process rights.  FAC ¶ 246.

21  As Plaintiffs themselves recognize, FAC ¶ 40, there is no constitutional right to

22  ————————————

23      [9] California does prohibit "arbitrary, capricious or harassing" searches of parolees.
    See Cal. Penal Code § 3067(d); Samson, 547 U.S. at 856.  However, to the extent Plaintiffs

24  allege constitutional violations based on searches and seizures undertaken "injudiciously,
    arbitrarily, capriciously, and/or in a harassing manner," FAC ¶ 130(a), the allegation is

25  conclusory.  Iqbal, 129 S. Ct. at 1950.

26      [10] The Court notes that California's parole scheme has been found to give rise to a
    cognizable liberty interest in release on parole.  McQuillion v. Duncan, 306 F.3d 895, 902

27  (9th Cir. 2002).  The pertinent question here is whether 15 Cal. Code Regs. § 2600 ("[a]
    parole agent may impose a parole hold only when the parole agent determines that the

28  parolee falls within the criteria listed in Section 2601…") gives rise to a cognizable liberty
    interest in remaining released on parole absent certain circumstances.

1   rehabilitative programs.  Rhodes v. Champan, 452 U.S. 337, 348 (1981); Coakley v.

2   Murphy, 884 F.2d 1218, 1221 (9th Cir. 1989); Rizzo v. Dawson, 778 F.2d 527, 531 (9th

3   Cir. 1985).  This is true for both incarcerated inmates as well as for parolees.  See Purkey v.

4   Simmons, 29 Fed. Appx. 546, 547-548 (10th Cir. 2002) (finding no authority to establish

5   that parolee has a federal constitutional right to rehabilitation treatment); cf. DeShaney v.

6   Winnebago Co. Dep't of Soc. Servs., 489 U.S. 189, 200 (1989) (noting under substantive

7   due process analysis the government's "affirmative duty to protect arises not from [its]

8   knowledge of the individual's predicament or from its expression of intent to help him, but

9   from the limitation which it has imposed on his freedom to act on his own behalf").

10          The above notwithstanding, Plaintiffs attempt to articulate a state law liberty interest

11   in rehabilitative services.  FAC ¶ 40.  To create a right entitled to the procedural protections

12   of the Due Process clause, a state law must contain "(1) substantive predicates governing

13   official decisionmaking, and (2) explicitly mandatory language specifying the outcome that

14   must be reached if the substantive predicates have been met."  James v. Rowlands, 606

15   F.3d 646, 656 (9th Cir. 2010) (quoting Bonin v. Calderon, 59 F.3d 815, 842 (9th Cir. 1995)

16   (internal quotation marks and citation omitted)).  Plaintiffs cite various sections of the

17   California Penal Code and the California Code of Regulations, FAC ¶¶ 36-50, but fail to

18   identify any state law containing the substantive predicates or mandatory language required

19   to create a protected liberty interest.[11]

20          Plaintiffs also attempt to establish a due process violation based on the "frequent"

21   re-incarceration of adjudicated parole violators.  However, the mere fact of re-incarceration

22   does not violate the parolees' due process rights.  The procedural due process rights of

23

24          [11] For example, Plaintiffs allege that the purpose of parole is rehabilitation, citing
      Cal. Penal Code § 3000(a)(1) (parole is "critical to successful reintegration of the offender
25   into society," and "it is in the interest of public safety for the state … to provide
      educational, vocational, family and personal counseling [services] necessary" to assist in
26   that transition).  The language of Section 3000(a)(1) is clearly not mandatory in nature.
      Plaintiffs also cite Cal. Penal Code § 3453(r), which requires that all parolees agree "to
27   participate in rehabilitation programming as recommended by the supervising county
      agency."  While this code section requires that *parolees* agree to participate in rehabilitative
28   programming, nothing therein mandates that the *state* provide such services.  The other
      state provisions cited by Plaintiffs are similarly lacking.

1  parolees may be violated if parole revocation hearings fail to comply with the safeguards

2  set forth in Morrissey v. Brewer, 408 U.S. 471 (1972).  The substantive due process rights

3  of an individual parolee may be violated if the decision to revoke parole was "so totally

4  devoid of evidentiary support as to be invalid under the Due Process Clause of the

5  Fourteenth Amendment."  Douglas v. Buder, 412 U.S. 430, 432 (1973).  Plaintiffs have

6  alleged neither, and therefore fail to state a due process claim based on the mere fact of re-

7  incarceration.  See County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (substantive

8  due process claims for abuse of executive power are evaluated under the "shocks the

9  conscience" standard); Hawkins v. Freeman, 195 F.3d 732, 738 (4th Cir. 1999) (under

10  "shocks the conscience" standard, re-incarceration following erroneous grant of parole did

11  not violate substantive due process despite parolee's exemplary conduct while released).

12      Accordingly, the Court GRANTS Defendants' motion to dismiss Claim Two, which

13  is dismissed with prejudice.

14                    c)      *Claim Three*

15      In Claim Three, Plaintiffs allege that Defendants violate parolees' equal protection

16  rights by subjecting parole violators to the same punitive jail or prison conditions as

17  inmates serving principal sentences, as well as subjecting all felons to parole supervision

18  without individualized scrutiny of their criminal tendencies or rehabilitation.  FAC ¶ 247.

19      The Equal Protection Clause prohibits dissimilar treatment of similarly situated

20  individuals.  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

21  However, the clause provides no such protection regarding similar treatment of differently

22  situated individuals.  Merrifield v. Lockyer, 547 F.3d 978, 984-986 (9th Cir. 2008); Roush

23  v. White, 389 F.Supp. 396, 402 (N.D. Ohio 1975) (rejecting argument that "if it is illegal to

24  provide dissimilar treatment for persons similarly situated, it must also be a violation of the

25  Equal Protection clause to give similar treatment to those dissimilarly situated").

26      Plaintiffs' reliance on Cornwell v. Hamilton, 80 F. Supp. 2d 1101 (S.D. Cal. 1999) is

27  unavailing.  In Cornwell, the court allowed plaintiffs to assert due process and equal

28  protection claims where application of the state's regulatory scheme treated "persons

1    performing different skills as if their professions were one and same." Id. at 1103.  The

2    court noted that "sometimes the grossest discrimination can lie in treating things that are

3    different as though they were exactly alike." Id. (quoting Jenness v. Fortson, 403 U.S. 431,

4    442 (1971)).  Cornwell has subsequently been discredited by the Ninth Circuit.  See

5    Merrifield, 547 F.3d at 984-986 ("the reasoning of the district court in Cornwell . . . cannot

6    survive equal protection analysis").  The Ninth Circuit explained that the language

7    regarding discrimination in Jenness actually concerned *dissimilar* treatment of *different*

8    groups supporting a determination that such treatment was in fact rational.  Id. (emphasis

9    added).  However, where plaintiffs are "treated the *same* as other groups…the equal

10   protection analytical framework requiring a rational connection between a legitimate

11   interest and different classifications [is] *inapplicable*." Id.  (emphasis added).  The Equal

12   Protection Clause is likewise inapplicable to Plaintiffs' claim regarding the similar

13   treatment of differently situated parolees and inmates.

14       Accordingly, the Court GRANTS Defendants' motion to dismiss Claim Three,

15   which is dismissed without leave to amend.

16               *d)*       *Claim Six*

17       In Claim Six, Plaintiffs allege that the Sixth and Fourteenth Amendments require

18   parole revocation hearings to be held in a "forum that is readily accessible to the public."

19   FAC ¶ 189.  Plaintiffs contend that Defendants conduct these hearings in "jail and prison

20   venues" that are inaccessible to the public and not conducive to a fair and impartial

21   adjudication. Id. ¶ 190.

22       The Sixth Amendment applies only to criminal prosecutions, and does not apply to

23   parole revocation hearings.  See Morrissey, 408 U.S. at 489; United States v. Hall, 419 F.3d

24   980, 985 (9th Cir. 2005), cert. denied, 126 S. Ct. 838 (2005) (rejecting the assertion that

25   Crawford v. Washington, 541 U.S. 36 (2004), extended Sixth Amendment protections to

26   revocation proceedings).

27       The more limited due process requirements applicable to parole revocation hearings

28   were set forth by the Supreme Court in Morrissey, and include: (1) written notice of the

claimed parole violations; (2) disclosure to the parolee of evidence against him or her; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (5) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (6) a written statement by the fact finders as to the evidence relied on and reasons for revoking parole. Morrissey, 408 U.S. at 489.

Plaintiffs do not dispute that a public trial is not required under Morrissey. Nevertheless, Plaintiffs contend that Morrissey's "silence" on the proper venue for parole revocations is not "golden," and that jail or prison held hearings are "classic secret tribunals" violative of the spirit, if not the letter, of the law. Opp'n at 14-15 n.36. While the Supreme Court did not explicitly address venue for parole revocation hearings, the Court did set forth specific due process requirements that exclude the right to a public trial. In doing so, the Court stressed that, "there is no thought to equate this second stage of parole revocation to a criminal prosecution *in any sense*." Morrissey, 408 U.S. at 489 (emphasis added). Nothing in Morrissey suggests that jail or prison held hearings are improper. Nor have Plaintiffs cited any other authority to support the claim that jail or prison held parole revocation hearings violate the Sixth Amendment.

Accordingly, the Court GRANTS Defendants' motion to dismiss Claim Six, which is dismissed without leave to amend.

### e)   *Claim Seven*

In Claim Seven, Plaintiffs allege that Defendants deny parolees their Sixth Amendment right to a jury trial by adjudicating parole revocation proceedings before deputy commissioners. FAC § 251.

It is well settled that the "full panoply of rights" due a defendant in a criminal prosecution, *including the right to a jury trial*, does not apply to hearings for revocation of parole, probation, or supervised release. See Morrissey v. Brewer, 408 U.S. 471, 480 (1972) (parole revocation); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (probation

revocation); <u>United States v. Huerta-Pimental</u>, 445 F.3d 1220, 1225 (9th Cir. 2006), <u>cert. denied</u>, 549 U.S. 1014 (2006) (supervised release); <u>United States v. Hall</u>, 419 F.3d 980, 985 n. 4 (9th Cir. 2005) (holding parole, probation, and supervised release are "constitutionally indistinguishable" and thus, subject to the same analysis).

Plaintiffs argue that revocations often expose parolees to a term of imprisonment longer than six months, the length of time normally held to constitute "serious" criminal penalty and trigger the right to jury trial. FAC ¶ 196. Plaintiffs fail to recognize, however, that re-incarceration following parole revocation is part of the original sentence authorized by the fact of conviction and does not constitute additional punishment. <u>See Huerta-Pimental</u>, 445 F.3d at 1225. As such, revocation does not deprive a parolee of the "absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." <u>Morrissey</u>, 408 U.S. at 480. It is therefore well-established that there is "no right to a jury trial" for post-conviction proceedings such as parole, probation, or supervised release revocation. <u>Huerta-Pimental</u>, 445 F.3d at 1225.

Accordingly, the Court GRANTS Defendants' motion to dismiss Claim Seven, which is dismissed without leave to amend.

### f)   *Claim Ten*

In Claim Ten, Plaintiffs allege that administration of California's parole revocation system violates the Eighth and Thirteenth Amendments by "oppressing and subjugating parolees into a downtrodden social caste." FAC ¶ 254.

In its ban on slavery and involuntary servitude, the Thirteenth Amendment includes an express exception for criminal convictions. <u>See</u> U.S. Const. amend. XIII, § 1 ("Neither slavery nor involuntary servitude, *except as a punishment for crime* whereof the party shall have been duly convicted, shall exist within the United States….")(emphasis added); <u>see also</u> <u>Draper v. Rhay</u>, 315 F.2d 193, 197 (9th Cir. 1963) ("Thirteenth Amendment has no application where a person is held to answer for a violation of a penal statute.").

Incarceration following a parole revocation is a component of the punishment imposed for the underlying crime of conviction, not punishment for the conduct leading to the revocation.  See Johnson v. United States, 529 U.S. 694, 701; United States v. Brown, 59 F.3d 102, 104-105 (9th Cir. 1995).  The Thirteenth Amendment, which excepts lawful punishment upon conviction of a crime, therefore does not prohibit re-incarceration following a parole revocation.  Howard v. United States, 274 F.2d 100, 103 (8th Cir. 1960).

The Eighth Amendment proscribes punishments that "involve the unnecessary and wanton infliction of pain," or that are "grossly out of proportion to the severity of the crime."  Gregg v. Georgia, 428 U.S. 153, 173 (1976).  In their Eighth Amendment claim, Plaintiffs allege that "[m]ost all parolees [i.e. felons having served a determinate sentence] are unproductively cycled in-and-out of prison like clockwork…for the entirety of their 3-4 year parole terms." FAC ¶ 214.  Those allegations set forth in the FAC fail to state a claim under the cruel and unusual standard.

The "narrow proportionality principle" contained in the Eighth Amendment "does not require strict proportionality between crime and sentence," but rather, forbids "*extreme sentences* that are *grossly disproportionate* to the crime."  United States v. Williams, 636 F.3d 1229, 1233 (9th Cir. 2011) (quoting Graham v. Florida, --- U.S. ---, 130 S. Ct. 2011, 2018 (2010) (emphasis added)).  It is exceptionally difficult for a criminal to show that his sentence is unconstitutionally disproportionate.  Williams, 636 F.3d at 1233 (citing Ewing v. California, 538 U.S. 11, 21 (2003) (noting that successful Eighth Amendment challenges in noncapital cases are "exceedingly rare")).

Moreover, Plaintiffs challenge the proportionality of an entire class of punishment in the abstract, in other words, whether revocation of parole constitutes cruel and unusual punishment as to all parolees.  FAC ¶ 214.  Until 2010, the Supreme Court declared a sentence categorically disproportionate only where the penalty was death.  Williams, 636 F.3d 1232 (citing Kennedy v. Louisiana, 554 U.S. 407 (2008) (prohibiting death penalty for nonhomicide crimes); Roper v. Simmons, 543 U.S. 551 (2005) (prohibiting death penalty for minor offenders); Atkins v. Virginia, 536 U.S. 304 (2002) (prohibiting death penalty for

mentally retarded.)).  In 2010, the Court held that juvenile offenders cannot be sentenced to life in prison without parole for nonhomicide crimes.  <u>Graham</u>, 130 S. Ct. at 2021 (stressing life imprisonment without parole is the "second most severe penalty permitted by law.").

On the other hand, while terms of parole, probation, and supervised release do limit a person's liberty and privacy, those practices constitute "punishment far less severe than prison."  <u>Williams</u>, 636 F.3d at 1232.  As such, Courts have held that even life terms of supervised release or parole do not violate the Eighth Amendment.  <u>See</u> <u>Williams</u>, 636 F.3d at 1233 (life term supervised release not categorically disproportionate for sex offenders); <u>United States v. Rea</u>, 532 F.2d 147 (9th Cir. 1976) (life parole not "per se cruel and unusual" for convicted offender eligible for prison term that exceeds life expectancy).

As regards the revocation of parole, the Supreme Court noted in <u>Brown</u> that, the "continuance [of parole] is conditioned on compliance with stated conditions-if the defendant does not comply with those conditions, parole…may be revoked.  Revocation does not extend the original sentence, it simply alters the conditions under which it is served."  59 F.3d at 105.

Thus, this Court finds that neither the imposition of a three to four year term of parole, nor the revocation of parole following a violation of its conditions, constitutes a categorical class of extreme punishment that is grossly disproportionate to the felony crimes for which the parolees were originally sentenced.  <u>Cf.</u> <u>Gregg</u>, 428 U.S. at 173.

Accordingly, the Court GRANTS Defendants' motion to dismiss Claim Ten, which is dismissed without leave to amend.

### E.   MOTION TO STRIKE

Defendants move to strike Plaintiffs' class allegations under Federal Rule of Civil Procedure 12(f), which authorizes the court to strike "from any pleading any insufficient defense or any redundant, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The function of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  <u>Whittlestone, Inc. v. Handi-Craft Co.</u>, 618 F.3d 970, 973 (9th Cir. 2010).

According to Defendants, the class allegations should be stricken because "the relief sought by individual plaintiffs would produce the same results as a class action," and therefore a class action is "inappropriate." Mot. at 13. However, Defendants cite no authority for the proposition that class allegations may properly be stricken on this basis pursuant to Rule 12(f). To the contrary, Defendants' argument is more appropriately raised at the class certification stage of the proceedings. Therefore, Defendants' motion to strike Plaintiffs' class allegations is DENIED.

## IV.   **CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.    Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint is GRANTED IN PART and DENIED IN PART.

2.    All claims against the State of California are dismissed without leave to amend.

3.    Claim One, insofar as it is based on unreasonable searches and seizures, and Claims Two, Three, Six, Seven, and Ten, are dismissed without leave to amend.

4.    Claims One, Four, Five, Eight, Nine and Eleven as to the individual state officials are dismissed with leave to amend to correct the deficiencies set forth above.

5.    Defendants' motion to strike Plaintiffs' class allegations is denied.

6.    Plaintiffs shall have until June 4, 2012 to file a Second Amended Complaint. The failure to do so will result in the dismissal of the action with prejudice.

7.    The parties shall show cause, in writing, why this action should or should not be transferred to the Central District of California, pursuant to any legally applicable doctrine or statute. Plaintiffs and Defendants shall simultaneously file their opening briefs, which are not to exceed ten (10) pages, by no later than April 30, 2012. The parties may submit a responsive brief, not to exceed five (5) pages, by no later than May 7, 2012. The matter will be taken under submission without a hearing. See Civ. L.R. 7-1(b).

8.    This Order terminates Docket 31.

IT IS SO ORDERED.

Dated: March 30, 2012

SAUNDRA BROWN ARMSTRONG
United States District Judge