UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DEREK WHEAT, et al.,<br><br>    Plaintiff,<br><br>  vs.<br><br>STATE OF CALIFORNIA, et al.,<br><br>    Defendants. | Case No: C 11-2026 SBA<br><br>**ORDER TRANSFERRING VENUE** |

Plaintiffs Derek Wheat ("Wheat"), a California parolee, and others, bring the instant putative class action, pursuant to 42 U.S.C. § 1983, on behalf of themselves and current and future parolees and probationers alleging that California's parole and probation revocation system violates their constitutional rights. The Court previously directed the parties to show cause why the instant action should not be transferred to the Central District of California where a virtually identical class action brought by the same Plaintiffs' attorney was previously litigated. Having read and considered the papers submitted in response to the order to show cause, and being fully informed, the Court hereby TRANSFERS the instant action to the Central District of California. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

# I. BACKGROUND

## A. PRIOR LITIGATION

The present action is the latest in a series of legal challenges involving California's parole revocation system. Prior to this case, two other actions, including another class action filed by Plaintiffs' counsel, Los Angeles-based attorney Eric C. Jacobson ("Jacobson"), were litigated in the Eastern District of California and later in the Central District of California. These actions are summarized below.

### 1. Valdivia v. Wilson

On May 2, 1994, six individuals and the Prisoners' Rights Union filed a section 1983 class action suit in the Eastern District of California against the State of California and various state officials. See Valdivia v. Wilson, No. Civ. S-94-0671 LKK (E.D. Cal. filed May 2, 1994); Defs.' Request for Judicial Notice in Supp. of Mot. to Dismiss ("RJN") Ex. A, Dkt 23-1; Ex. M, Dkt. 23-7. The plaintiffs alleged that they were denied legal counsel at their parole revocation hearings in violation of the Fourteenth Amendment. Id. Ex. A at 2-3. On December 1, 1994, the Honorable Lawrence K. Karlton certified a class consisting of: (1) California parolees at large; (2) California parolees in custody, as alleged parole violators; and (3) California parolees who are in custody, having been found in violation of parole and who have been sentenced to custody. Id. at 3.

On March 9, 2004, Judge Karlton entered a Stipulated Order for Permanent Injunctive Relief. Id. Ex. C, Dkt. 23-1. The injunction requires the State of California and responsible officials to implement policies and procedures with respect to the parole revocation process, including: (1) the appointment of counsel; (2) setting a probable cause hearing within a specified amount of time; (3) a plan to provide hearing space for revocation hearings; (4) standards, guidelines and training for effective assistance of state-appointed counsel; (5) access to evidence and the ability to subpoena and present witnesses and evidence to the same extent as the State; and (6) limitations on the use of hearsay evidence. Id. Judge Karlton approved the settlement and final injunction on March 17, 2004, and continues to maintain jurisdiction over the settlement. Id. Ex. D, Dkt. 23-2.

**1.** **Jacobson v. Schwarzenegger and Johnson v. Schwarzenegger**

On May 21, 2004, Attorney Jacobson—the same attorney who filed the instant action—filed a pro se action in the Central District of California. See Jacobson v. Schwarzenegger, No. CV-04-3629 JFW (E.D. Cal. filed May 21, 2004). The 97-page complaint alleged essentially two sets of claims. First, Jacobson, acting pro se, sought to represent a class of 125,000 California parolees whose rights alleged were violated by California's parole revocation system, notwithstanding the relief afforded in the Valdivia action. See id. Ex. F ¶ 13, Dkt. 23-3. Though not a parolee, Jacobson alleged that he could assert claims on behalf of the class under the doctrine of third party standing. Id. ¶ 12. Second, Jacobson sought to assert claims arising from his removal by the California Board of Prison Terms ("BPT") from the list of attorneys eligible to receive appointments to represent parolees at parole revocation hearings. Id. ¶¶ 10, 13. The named defendants included then Governor Arnold Schwarzenegger, along with fourteen other State officials.

Defendants filed a motion to dismiss and motion to strike, which the district court granted. See Jacobson v. Schwarzenegger, 357 F. Supp. 2d 1198 (C.D. Cal. 2004). Relying largely on the Ninth Circuit's decision in McHenry v. Renne, 84 F.3d 1172 (9th Cir. 1996), Magistrate Judge James W. McMahon found that the complaint failed to comport with the requirement under Federal Rule of Civil Procedure 8(a) that a pleading be "short and plain." Id. at 1205. The court noted that "[t]he complaint contains page after page of descriptive and often hyberbolic narrative, quotations from articles, descriptions of interviews and legal argument, and a lengthy digression on the California governor's purported relationship with the prison guard's union." Id. In addition, the court ruled that Jacobson lacked standing to represent the claims of parolees covered by the Valvidia settlement with respect to the "speculative claims of future parolees." Id. at 1121.

On January 21, 2005, Jacobson filed a 200-page First Amended Complaint which added Eric Johnson ("Johnson"), a California parolee, as a representative plaintiff. Id. Ex. G at 2-3, Dkt. 23-5. The amended complaint alleged that Johnson purported to represent a class consisting of "all felons currently serving determinate sentences and all felons who

have completed determinate sentences and been released to parole terms but have not yet been discharged from parole." Id. (citing First Am. Compl. ¶¶ 128-138). On February 15, 2005, Magistrate Judge McMahon sua sponte dismissed the First Amended Complaint with leave to amend, again for failure to comply with Rule 8(a). See Jacobson v. Schwarzenegger, 226 F.R.D. 395, 397 (C.D. Cal. 2005). Plaintiffs thereafter filed a Second Amended Complaint on March 11, 2005, and a Third Amended Complaint on August 31, 2005. RJN Ex. G at 2-3, Dkt. 23-5.

As with the previous iterations of the pleadings, the 107-page Third Amended Complaint asserted two sets of claims. Claims One through Eleven were directed at perceived constitutional deficiencies in California's parole revocation system. RJN Ex. F ¶ 13. These claims were brought by both plaintiffs on behalf of the class of "all felons who have completed determinate sentences and been released to parole terms but have not yet been discharged from parole." Id. ¶ 151(a).[1] The remaining claims, Claims Twelve through Eighteen, were brought by Jacobson to challenge his removal from the BPT list of attorneys eligible to represent parolees at parole revocation hearings. Id. ¶¶ 173-186. Jacobson alleged that he was "purged" from the attorney appointment list due to his representation of parolees , as well as his advocacy for reforming the parole revocation system. RJN Ex. G at 5.

---

[1] The complaint alleged that "[t]he size of the class is conservatively estimated to be approximately 160,000 persons." Id. ¶ 152. The class claims were styled, as follows: (1) violation of the Fourteenth Amendment right to be free from unreasonable searches and seizures (Claim One); (2) violation of a Fourteenth Amendment due process right to rehabilitative services (Claim Two); (3) violation of the Due Process and Equal Protection Clauses based on identical treatment of differently situated persons (Claim Three); (4) violation of a Fifth, Sixth, and Fourteenth Amendment right to affected for presentation of counsel that parole revocation hearings (Claim Four); (5) violation of a Sixth and Fourteenth Amendment right to parole revocation hearings of sufficient duration, open to the public, and before qualified an impartial hearing officer (Claims Five, Six, and Eight); (6) violation of a Sixth and Fourteenth Amendment right to a jury trial (Claim Seven); (7) violation of the Fourteenth Amendment right to a disposition made pursuant to a meaningful collaborative process (Claim 9); (8) violation of the Eighth and Thirteenth Amendment rights to be free of inhumane treatment and enslavement (Claim Ten); and (9) state tort claims (Claims Eleven). Id. ¶¶ 162-172.

On January 16, 2007, Magistrate Judge Jennifer T. Lum issued a 65-page Report and Recommendation in which she recommended dismissing Claims Two, Three, Six, Seven and Ten, with prejudice. Id. Ex. G, Dkt. 23-5. In addition, she recommended dismissing Jacobson as a plaintiff from Claims One through Eleven for lack of standing, and severing Johnson's remaining claims (i.e., Claims One, Four, Five, Eight, Nine and Eleven) from Jacobson's individual claims. Id. On August 1, 2007, District Judge John F. Walter adopted the Report and Recommendation. Id. Ex. H, Dkt. 23-6. Judge Walter subsequently issued an Order Severing Claims and directed the Clerk to assign a new case number to the claims being asserted by Johnson. Id. Ex. I. The severed case was styled as Johnson v. Schwarzenegger, No. CV-07-6176 JFW.[2]

On September 28, 2007, Judge Walter ruled in the Johnson matter that Johnson could not proceed on his claims on a class basis on the ground that his attorney, Jacobson, inexcusably failed to file a motion for class certification within the time prescribed by the Central District Local Rules. RJN Ex. J, Dkt. 23-6.

On February 14, 2008, Judge Walter granted the defendants' motion for judgment on the pleadings as to remaining Claims One, Four, Five, Eight and Nine, which he dismissed with prejudice for lack of standing based on the fact that Johnson was not a parolee. Id. Ex. K at 3, Dkt. 23-6. Judge Walter declined to exercise supplemental jurisdiction over Claim Eleven, which alleged various state law causes of action. Id. at 4.

On March 15, 2008, Jacobson appealed the dismissal of Johnson's claims to the Ninth Circuit. Id. Ex. L. On April 18, 2012, the Ninth Circuit affirmed the Central District's decision. See Johnson v. Schwarzenegger, 476 Fed.Appx. 349, 2012 WL 1332026 (9th Cir. Apr. 18, 2012); Defs.' Request for Judicial Notice in Supp. of Opening Brief Re Transfer to Central District ("Second RJN"), Ex. A, Dkt. 50.

---

[2] For simplicity, further references to the Johnson action relate to the class claims alleged by Johnson on behalf of a class of California parolees.

**B.   THE PRESENT CASE**

On April 26, 2011, during the pendency of the Johnson appeal, Attorney Jacobson filed the instant representative action on behalf of 160,000 California parolees and future parolees (or future probationers) who are due to be released on parole or probation. Compl. ¶ 4, Dkt. 1. The Complaint named Derek Wheat as the only representative Plaintiff. Id. ¶ 5. After Defendants filed a motion to dismiss, the parties stipulated to the filing of a First Amended Complaint ("FAC"). Dkt. 14, 20.

On July 26, 2011, Jacobson filed a 79-page FAC on behalf of Wheat, as well as newly-joined Plaintiffs, Antonio Martinez ("Martinez") and Shandon Davis ("Davis"). Dkt. 21. Wheat and Martinez are alleged to be under active parole supervision by the California Department of Corrections ("CDCR") in this District. FAC ¶¶ 7, 11. Davis allegedly is serving a fifteen-year determinate sentence and is not alleged to be on parole. Id. ¶ 94-95. Plaintiffs purport to represent a class of "all felons who are serving determinate sentences and will be released to parole (and/or probation) terms and all current parolees who have not yet been discharged from parole." Id. ¶ 222. They bring this action to challenge various "due process deficiencies" within California's parole revocation system. Id. ¶ 3. They generally accuse "juridically linked" Defendants, i.e., officials at the Governor's Office, the CDCR and the BPH, of operating a "parole revocation mill" to sustain California's "burgeoning prison-industrial complex." Id. ¶¶ 69, 73, 75.[3]

---

[3] The Defendants identified in the case caption in the FAC are: (1) Edmund G. Brown, Jr., Governor of California, in his official and individual capacity; (2) James Humes, Office of the Governor, Executive Secretary for Administration, Legal Affairs and Policy, in his official and individual capacity; (3) Matthew L. Cate, Secretary of the CDCR, in his official and individual capacity; (4) Jeanne Woodford, Senior Fellow for Corrections Policy, UC Berkeley & Special Advisor to the Governor, in her official and individual capacity; (5) Terri L. McDonald, CDCR, Chief Deputy Secretary for the Adult Operations Division, in her official and individual capacity; (6) Scott M. Kernan, CDCR, Undersecretary for the Adult Operations Division, in his official and individual capacity; (7) Wendy S. Still, CDCR & Special Advisor to the Governor, in her official and individual capacity; (8) Roberto J. Ambroselli, CDCR, Senior Advisor for the Division of Adult Parole Operations, in his official and individual capacity; (9) Margarita E. Perez, CDCR, Deputy Director for the Adult Operations Division, in her official and individual capacity; (10) Marvin E. Speed, CDCR, Parole Administrator I, in his official and individual capacity; (11) Arnold P. Fitt, CDCR, Parole Agent III, Unit Supervisor Berkeley Parole

1  The FAC alleges ten federal constitutional claims and one supplemental state law
2  claim. Claims One through Ten of the FAC assert violations of the Fourth, Fifth, Sixth,
3  Eighth, Thirteenth, and Fourteenth Amendments of the United States Constitution, as
4  follows: (1) unreasonable search and seizure of parolees, and the unlawful deprivation of
5  privacy and liberty (Claim One); (2) violation of due process based on the frequent re-
6  incarceration of parolees in punitive jail and prison environments, and the deprivation of
7  effective rehabilitation services (Claim Two); (3) violation of equal protection based on
8  identical treatment of differently-situated persons (Claim Three); (4) deprivation of the
9  right to effective assistance of counsel (Claim Four); (5) violation of due process based on
10 improper hearings of inadequate duration (Claim Five); (6) denial of the right to a public
11 trial (Claim Six); (7) denial of right to jury trial (Claim Seven); (8) violation of due process
12 based on improper hearings before non-neutral, non-detached and unqualified hearing
13 officers (Claim Eight); (9) violation of due process based on biased, unfair and unjust
14 dispositions (Claim Nine); and (10) unlawful infliction of cruel and unusual punishment,
15 and enslavement or subjection to the badges and incidents thereof (Claim Ten). Id. ¶¶ 245-
16 254. Claim Eleven is an amalgam of various supplemental state claims which are alleged
17 in an entirely conclusory manner. Id. ¶¶ 255-56.

18  Plaintiffs seek a litany of remedies, including, without limitation, a court order:
19 directing CDCR to end their warrantless searches and seizures of parolees; id. ¶ 257(A);
20 directing the CDCR and BPH to provide rehabilitative services to parolees; id.; increasing

---

Office, in his individual and official capacity; (12) Robert G. Doyle, Chairperson of the California Board of Parole Hearings ("BPH"), in his official and individual capacity; (13) Martin N. Hoshino, Executive Officer of the BPH, in his official and individual capacity; (14) Rhonda W. Skipper-Dotta, BPH, Chief Commissioner, in her official and individual capacity; (15) Kenneth E. Cater, BPH, Chief Deputy Commissioner, in his official and individual capacity; (16) George E. Lehman, BPH, Associate Chief Deputy Commissioner, in his official or individual capacity; (17) Patricia A. Cassady, BPH, Associate Chief Deputy Commissioner, in her official or individual capacity; (18) Richard D. Jallins, BPH, Associate Chief Deputy Commissioner, in his official and individual capacity; (19) William B. Crisologo, BPH, Associate Chief Deputy Commissioner, in his official and individual capacity; (20) Alan Silver, BPH, Deputy Commissioner, in his official and individual capacity; (21) Edward McNair, BPH, Deputy Commissioner, in his official and individual capacity; and (22) unknown current officials Nos. 1-10 of the State of California, CDCR or BPH, in their official or individual capacities.

the time allotted for parole revocation hearings; id.; "*disestablishing* California's unconstitutional aberrant non-rehabilitative system of parole administration and revocation," transferring the powers of the Secretary of the CDCR over parole administration and revocation procedures to a court appointed receiver, id. ¶¶ 257(C); and directing the immediate implementation of Assembly Bill 109 ("AB 109").

In response to the FAC, Defendants filed a second motion to dismiss, which presented both procedural and substantive grounds for dismissal. Dkt. 31. Among Defendants' procedural contentions was that the action should be dismissed under the first-to-file rule based on prior lawsuits—principally the Johnson action—which involved essentially the same claims as are alleged in this action. Id. at 3-4. Given that Johnson had been terminated, the Court declined to find that *dismissal* of the action was appropriate. Because Defendants only sought dismissal and not a transfer, the Court ordered the parties to show cause why the instant action should or should not be transferred to the Central District of California. Id. at 12 n.5.[4]

In their response to the show cause order, Defendants contend that the action should be transferred to Central District under the doctrine of federal comity, or alternatively, pursuant to 28 U.S.C. § 1404(a). Plaintiffs oppose transferring venue to the Central District. However, to the extent the Court is inclined to change venue, Plaintiffs request that the action be transferred to the Eastern District of California. The matter has been fully briefed and is ripe for adjudication.[5]

---

[4] The Court Order of March 30, 2012, also addressed the sufficiency of the claims alleged in the FAC and granted the motion to dismiss. Dkt. 48. The Court granted Plaintiffs leave to amend only as to Claims One, Four, Five, Eight, Nine and Eleven. Dkt. 48 at 28. Nonetheless, Plaintiffs' Second Amended Complaint, filed June 4, 2012, Dkt. 55, exceeds the permissible scope of leave to amend by joining three additional Plaintiffs and joining and substituting various Defendants. These unauthorized modifications are improper. See Earll v. eBay Inc., No. C 10-00262 EJD, 2012 WL 3255605, at *2 (N.D. Cal. Aug. 8, 2012) (dismissing newly-alleged claim in an amended complaint that exceeded the scope of the leave to amend previously granted by the court).

[5] Because the Court finds that transfer is warranted for reasons of comity, the Court does not reach the parties' arguments regarding transfer under 28 U.S.C. § 1404(a).

## II. DISCUSSION

### A. OVERVIEW

The "first-to-file rule," also referred to as the federal comity doctrine, "permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982). "This circuit has defined the rule of comity as merely of recognizing exclusive jurisdiction in the court first acquiring jurisdiction of any action." Rath Packing Co. v. Becker, 530 F.2d 1295, 1306 (9th Cir. 1975)) (internal quotations and citation omitted). "The first-to-file rule was developed to 'serve the purpose of promoting efficiency well and should not be disregarded lightly.'" Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 625 (9th Cir. 1991) (quoting in part Church of Scientology v. United States Dep't of the Army, 611 F.2d 738, 750 (9th Cir. 1979)).

In exercising its discretion to dismiss, transfer or stay an action under the first-to-file rule, a court should consider: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. Z-Line Designs, Inc. v. Bell'O Int'l LLC, 218 F.R.D. 663, 665 (N.D. Cal. 2003) (Whyte, J.). The issues and parties in the first and second action need not be identical; it is sufficient that they are "substantially similar" in order for the rule to apply. Inherent v. Martindale-Hubbell, 420 F. Supp.2d 1093, 1097 (N.D. Cal. 2006); accord Jeske v. Cal. Dept. of Corrections and Rehabilitation, No. 1:11-CV-01838 JLT, 2012 WL 1130639, at *6 (E.D. Cal. Mar. 30, 2012) ("the rule is satisfied if some of the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters.").

### B. ANALYSIS

The Court finds that the record supports transferring the instant action to the Central District under the doctrine of federal comity. With regard to the first consideration, there is no dispute between the parties that the Johnson action is the first-filed action, as it was

1  commenced in the Central District in 2004 while the instant action was filed in 2011. Thus,
2  the first factor pertinent to the Court's analysis weighs in favor of transfer.
3        The second factor—similarity between the parties—also militates in favor of
4  transfer. Where class actions are involved, it is the class, as opposed to the identity of the
5  class representative, which is germane. Jeske, 2012 WL 1130639, at *6. In the Johnson
6  action, the class was identified as "all felons who have completed determinate sentences
7  and been released to parole terms but have not yet been discharged from parole." RJN, Ex.
8  F ¶ 151(a), Dkt. 23-4. The class identified in this action is similarly identified as "all felons
9  who are serving determinate sentences and will be released to parole (and/or probation)
10 terms and all current parolees who have not yet been discharged from parole." FAC ¶ 222.
11 Except for the inclusion of future parolees in this action, the class definitions are
12 substantially similar. Moreover, the interests of the classes are fundamentally the same,
13 i.e., avoidance of harm resulting from California parole revocation system.[6] As for
14 defendants, both actions name the current Governor of the State of California as well as
15 various State officials who are alleged to be responsible for or connected to the State's
16 parole revocation system. Accordingly, the Court finds that there is sufficient similarity
17 between the parties in both actions to meet the second requirement for application of the
18 federal comity doctrine.
19       Finally, the record supports the conclusion that the legal issues involved in this and
20 the prior action are substantially the same. A number of the allegations contained in
21 pleadings in Johnson are repeated verbatim in the FAC filed herein. At their core, both
22 actions challenge the constitutionality of various aspects of California's parole revocation
23 system. Notably, each of Plaintiff's surviving claims—i.e., deprivation of privacy and
24 liberty (Claim One), deprivation of the right to effective assistance of counsel (Claim Four);
25 violation of due process based on improper hearings of inadequate duration (Claim Five),
26 violation of due process based on improper hearings before non-neutral, non-detached and

---

[6] The earlier versions of the pleadings in Johnson identified the class as consisting of both future and current parolees. See RJN Ex. G at 3.

1 unqualified hearing officers (Claim Eight), violation of due process based on biased, unfair
2 and unjust dispositions (Claim Nine), unlawful infliction of cruel and unusual punishment,
3 and enslavement or subjection to the badges and incidents thereof (Claim Ten), and
4 supplemental state claims (Claim Eleven)—were alleged in the Johnson action. Compare
5 FAC ¶¶ 245-254 with RJN Ex. F ¶¶ 162-172.[7] In addition, the relief sought in the two
6 actions is largely identical; namely, a complete overhaul of California's parole revocation
7 system. See RJN Ex G. at 100-104; FAC ¶¶ 257-58.
8      Notably, Plaintiffs make no attempt to address, let alone dispute, any of the three
9 considerations relevant to a proposed transfer under the doctrine of federal comity. To the
10 contrary, Plaintiffs readily acknowledge that the Johnson action "involves all or a material
11 part of the same matter and all or substantially all of the same parties" as this action. Pls.'
12 Opp'n at 1. Instead, Plaintiffs contend that no purpose will be served by transferring this
13 case to the Central District because Johnson is no longer an active case and the Ninth
14 Circuit has since issued a summary order affirming the dismissal. The Court finds
15 Plaintiffs' argument unpersuasive.
16      The judges of the Central District have already invested significant time and
17 resources in reviewing and considering the numerous pleadings filed by Jacobson in pursuit
18 of claims ostensibly on behalf of California parolees. In Johnson, the action was litigated
19 through at least three separate, lengthy complaints containing hundreds of pages and
20 paragraphs of allegations, over the course of almost four years. Significantly, the parties in
21 Johnson engaged in extensive motion practice, which resulted in a number of substantive
22 rulings addressing the sufficiency of the pleadings and the various claims alleged therein.
23 Given the Central District's familiarity with the parties and issues presented in both this and
24 the Jacobson action, the policies underlying the doctrine of federal comity persuade the
25

26     [7] The only substantive difference between the two actions is that in Claim One of the FAC filed in the instant action, Plaintiffs allege a due process violation based on AB 109
27 and recently enacted parole regulations. FAC ¶ 245. As noted, the claims need not be identical to sustain a finding that the legal issues in the two actions are substantially similar.
28 See Inherent, 420 F. Supp.2d at 1097.

- 11 -

Court that the present action should be transferred to the Central District. See Church of Scientology, 611 F.2d at 750 ("The doctrine [of judicial comity] is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments."); c.f. Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc., No. C 03-3711 MHP, 2003 WL 22387598, at *4 (N.D. Cal. Oct. 14, 2003) (finding that transfer to the Central District was proper, *even if the prior action is no longer pending*, "[to] avoid the risk of conflicting rulings" and "save judicial resources").[8]

Finally, Plaintiffs make a new argument in their reply that this Court has already ruled the doctrine of federal comity is inapplicable to this action. Pls.' Reply at 1. "The district court need not consider arguments raised for the first time in a reply brief." Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007). Nonetheless, the Court finds no merit to this contention. In its prior ruling on Defendants' motion to dismiss the FAC, the Court found that the doctrine of federal comity did not warrant the *dismissal* of the action. Dkt. 48 at 11-12. Since Defendants did not request a *transfer*, the Court declined to consider a transfer sua sponte, and instead, issued an order to show cause. Moreover, the Court's prior ruling was based on the showing made at that time by the parties. Unlike their motion to dismiss, which devoted less than a page to the comity argument, Defendants' present response to the Court's order to show provides a much more thorough and thoughtful discussion of the issues, and includes specific cites to the record, as well as citations to relevant legal authority, to support their positions.[9] Based on the more comprehensive briefing provided by Defendants, the Court is now persuaded that the doctrine of federal comity warrants the transfer of this action to the Central District.

---

[8] Though Johnson may now be closed, the Local Rules of the Central District permit the assignment of this action to the judge who previously presided over the action. See C.D. Cal. L.R. 83-1.3.1.

[9] The brevity of Defendant's earlier argument is undoubtedly attributable to the strict page limits applicable to motions filed in this Court, coupled with the numerous other bases for dismissal presented in their motion.

### III. CONCLUSION

The Court, in its discretion, finds that a transfer of this action to the Central District is warranted under the federal comity doctrine. Accordingly,

IT IS HEREBY ORDERED THAT:

1. The instant action is TRANSFERRED forthwith to the Central District of California.

2. The Clerk shall close the file and terminate all pending matters.

IT IS SO ORDERED.

Dated: February 5, 2013

SAUNDRA BROWN ARMSTRONG
United States District Judge